*In re* MARRIAGE OF NANCY B. MOBILE LEFLER, Petitioner-Appellant and Cross-Appellee, and RAYMOND A. MOBILE, Respondent-Appellee and Cross-Appellant.

First District (4th Division)   Nos. 1—86—2890, 1—86—3432, 1—86—3441 cons.

Opinion filed October 20, 1988.—Rehearing denied August 10, 1989.

Tews, Theisen & Theisen, of Chicago (Kenneth F. Theisen and Linda S. Kagan, of counsel), for appellant.

G. Wallace Roth, of Chicago (Francis X. Riley, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Nancy Lefler sought a post-decree increase in child support based on a substantial change in circumstances. Raymond Mobile filed three petitions for an abatement or reduction of child support. The trial court increased the support award for five months, kept it at $850 for the next 11 months, and then reduced it to $600 from May 1, 1986, "until further order of court." The court awarded Lefler approximately 25% of the attorney fees requested. She appeals from the order of child support and the order of attorney fees. Mobile cross-appeals from the fee award. The court also entered an order granting Nancy arrearages, which are not on appeal.

BACKGROUND

The parties were divorced on July 7, 1981. Two children, then aged 11 and 13, were born of the marriage. Raymond was employed by Leffingwell Steel, grossing $60,000 and netting approximately $30,110.00 per year. Nancy was unemployed. Under the terms of the judgment for dissolution, Nancy was awarded custody of the two girls and $1,250 per month in unallocated maintenance and child support.

On August 13, 1982, the trial court modified the monthly unallocated award to reflect Nancy's remarriage. Child support was set at $835 per month.

On February 3, 1984, Nancy moved to Italy, where her husband was stationed by the United States Navy. She took the children with her, with Raymond's consent.

In December of 1984, Nancy filed a petition for an increase in child support, alleging that there had been a substantial change in cir-

cumstances, that the children's expenses had increased and that Raymond had a greater ability to pay. At the time, Raymond was employed by Sonray Precision Steel Products, earning approximately $109,200 per year.

Raymond testified that he had left Leffingwell Steel to work for Mid-City Steel in September 1982. His salary was $100,000 per year, although he stayed with them for only five or six months. He then started his own business, Sonray Precision Steel Products, in February 1983. His salary was $109,000, or $9,100 gross per month and $5,800 net. He drew this amount until June of 1985, when the business closed. Because of his failure to make employee withholding payments, the Internal Revenue Service eventually assessed a $41,000 tax penalty against him.

On June 18, 1985, Raymond filed an emergency petition for abatement of child support, which was entered and continued to March 24, 1986.

On October 1, 1985, four months after his business closed, Raymond began employment with Regency Steel Company, earning $100,000 per year. Notwithstanding his new job, Raymond filed a second, or supplementary, emergency petition for abatement of child support on October 18. His W-2 from 1985 showed earnings from Regency of $25,000 for the three-month period of October through December 1985.

On March 25, 1986, Nancy filed a petition for rule to show cause against Raymond for his failure to pay child support and to set arrearages which had accrued since June 1985, the time of his first petition for abatement.

On May 1, 1986, Raymond became the regional director of midwestern sales for Staub Metal Company. From late April 1986 to the trial of the petitions for post-decree relief, Raymond worked for Staub as an independent sales agent on a commission basis.

On May 6, 1986, Raymond filed a second supplemental emergency petition for abatement of child support, having left his job with Regency Steel, the job he had begun in October of 1985. At this time, however, Raymond was earning money through Staub.

Nancy testified at trial as to the children's increased expenses. Her husband, who works for the Navy, nets $903 per month.

Raymond's wife, Cheryl, earns approximately $1,000 per month as a flight attendant.

Raymond testified that he had received six commission checks totalling $10,344.47 from his May 1, 1986, starting date at Staub to the date of trial, July 29, 1986. He subsequently admitted that he had in

fact received eight checks during that three-month period, representing $17,621.

Raymond estimated his current income at $3,000 net per month. His gross for the year, from January 1 to August 11, 1986, was approximately $36,000, with $16,900 representing his payment from Regency and the balance from Staub. He testified that his monthly net for the eight months of 1986 would be $2,560 although his gross would be $4,500. Checks introduced into evidence, however, showed his total gross income from Staub from April 22, 1986, through August 11, 1986, to be $19,346.20 and his gross from Regency to be $29,346.20. This totalled $48,780.20 for the approximately 8½ months of 1986.

Raymond testified that his refund check from the IRS had been seized for Sonray's nonpayment of employee withholding taxes. He further testified regarding financial difficulties he was having as a result of the failure of his business in June 1985, including attorney fees for defending certain lawsuits. He testified regarding the IRS penalty assessment of $41,000.

Raymond's business attorney, Ariel Weisberg, testified on Raymond's behalf on the petition to abate child support. He related that his outstanding bill to Raymond was approximately $9,000 as of October 1985, plus an additional $5,000 or $6,000 incurred since then. Of the various lawsuits filed against Sonray, some had been dismissed or resolved, resulting in no liability to Raymond. At the time of trial, Raymond had no outstanding, liquidated liability resulting from any of the lawsuits. Weisberg also testified regarding various other matters in which he had represented Raymond's interests, such as a proposed business venture that Raymond and another person had explored in 1985.

Raymond further testified that he had completed a mortgage loan application in July 1985 for his house. On the application he stated that his employer in July 1985 was Regency Steel, although he had earlier testified that he was unemployed in July 1985 and did not work for the company until October 1985. He secured a verification of employment from Regency, listing February 1, 1985, as date of employment. He admitted that he knew he was falsifying information on the application.

Cheryl Mobile, Raymond's wife, testified that the deposits she made to the accounts of RCM Company, Ltd., of which she was president, came primarily from her husband's income. In a four-week period in July 1986, $11,735.40 had been deposited in the company's accounts.

The trial court ruled that Nancy had established grounds for an increase in support and raised the award from $835 to $1,250 for the period from January 1, 1985, to June 15 of that year. For the period of June 16 through May 1, 1986, the court dropped the support to $850 per month. From May 1, 1986, forward, child support was reduced to $600, to reflect a credit for Raymond's business debts.

On Nancy's petition for attorney fees and costs, the court reduced the requested amount from approximately $27,000 in fees and costs to $6,597.

OPINION

Based on the evidence before it the trial court determined that Nancy was entitled to an increase in child support. Nevertheless, the effect of the order is to decrease the support award, a result that is not appropriate on this record. For the reasons that follow we increase the child support award, increase the award of costs, and affirm as modified.

I

■ The primary difficulty in setting the proper amount of support in this case lies in ascertaining Raymond's net income for the time periods in question. Under the statutory guidelines of section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 505), the minimum child support award for two children is 25% of the paying parent's net income, as defined in the statute.[1]

■ The documentary evidence reveals that Raymond's gross in-

---

[1]Net income is determined by taking total income from all sources and deducting the following items:

"(a) Federal income tax (properly calculated withholding or estimated payments);

(b) State income tax (properly calculated withholding or estimated payments);

(c) Social security (FICA payments);

(d) Mandatory retirement contributions required by law or as a condition of employment;

(e) Union dues;

(f) Dependent and individual health/hospitalization insurance premiums;

(g) Prior obligations of support or maintenance actually made pursuant to a court order;

(h) Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income ***." Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3).

come in 1985, despite the four months of unemployment, was $77,768. By August 11, 1986, Raymond had earned nearly $50,000. By his own testimony, Raymond anticipated earning from Staub approximately the same amount he had been earning at Regency, or $100,000 per year. Neither party, however, has given this court a clear *net* figure from which to assess a reasonable child support award.

At trial, Nancy's attorney requested $1,750 per month, based on a net monthly figure of $7,038. This figure is misleading, however, in that the $11,735 per month gross upon which it is based was shown to be for a one-month period only, in which that amount had been deposited as commission checks from Staub. On the other hand, we believe that the $600-per-month figure that Raymond's counsel suggested and the court awarded from May 1986 forward places undue emphasis on Raymond's business debts, which were not shown to impede his monthly earnings in the form of deductions for indebtedness or otherwise interfere with his cash flow. Raymond's business attorney testified how careful planning had insulated Raymond's earnings from his creditors, to the extent possible and legal. He offered no evidence that Raymond was paying his legal fees out of current earnings. Raymond testified that the IRS had liened his house but did not state that the house was in foreclosure or that the IRS was attempting to collect the tax penalty out of Raymond's current earnings. In fact, it is not clear from the record whether the tax lien against Raymond's home was in fact $41,000 or whether Raymond's $12,553 tax refund for 1985 that the IRS seized had been set off from the penalty, leaving a balance due of approximately $28,500.

For the period of January 1, 1985, through June 15, 1985, the court awarded support in the amount of $1,250. This period correlates with Raymond's annual income of $109,000 from Sonray, until its demise in June 1985. To arrive at the support amount, the trial court apparently allowed a 40% overhead figure for the self-owned business, leaving a net income of $60,000. Twenty-five percent of $60,000 is $15,000, which, when divided by 12 months comes to $1,250. While a more exact calculation of net income than the 40% figure may have been preferable, we do not believe it is an unreasonable figure, since Federal and State income tax withholding and FICA withholding presumably would total close to one-third of gross. While 40% off gross may be liberal, it is not an abuse of discretion. Accordingly, we affirm the trial court's award of $1,250 per month for the 6½ month period in 1985.

From June 16, 1985, to May 1, 1986, the court awarded Nancy $850 per month, without explaining the basis for this figure and with-

out articulating a sound base for reducing it further to $600 per month from May 1986 until further order of court.

The evidence indicates that Raymond's gross income from September 1982 through August 1986 stayed remarkably close to $100,000 per annum. At the time of the parties' divorce, he was grossing $60,000 and netting approximately $31,000. Unallocated child support and alimony was awarded in the amount of $1,250. In August 1982, the alimony portion was eliminated upon Nancy's remarriage and support was set at $835. The next month, September 1982, Raymond began earning $100,000 per year at Mid-City Steel, a job he had until February 1983, at which time he created Sonray. He earned $109,000 per year while at Sonray, a period spanning two years and four months. During this time, while he was paying child support based on his previous, substantially lower income, he was enjoying the benefits of his higher income.[2] After a four-month period of unemployment (during which time he was pursuing other business ventures) he again obtained employment at $100,000 per year, at Regency Steel. From October 1985 to May 1986 he worked for Regency. From sometime in April 1986 to the time of trial in August 1986 he was earning commissions from Staub in varying amounts, but testified that he anticipated earnings similar to his previous positions. In July 1986 he deposited approximately $11,700 in commission checks, covering a four-week period.

From this employment history we infer that Raymond was and is a consistently high earner. His business attorney's testimony indicates that he is also sophisticated in the ways of corporate planning and avoiding personal liability from corporate creditors. Other evidence, such as his falsification of a mortgage loan application and his apparent foot-dragging in discovery, leaves the impression that his own assessment of his net monthly earnings and business debts may be less than candid. In fact, the trial court noted during the hearing on Nancy's fee petition that his testimony was "not forthright," that he "sure appeared to the Court to lie under oath," and that "the question of what his earnings are can certainly be in doubt here at the present and in the future."

The history of Raymond's earnings suggest that his annual income may well be at the $100,000 level overall. Nevertheless, taking

---

[2] We believe that the tax penalty that Raymond incurred for failure to pay employee withholding tax and the attorney fees that arose out of Sonray's demise should be attributed at least in part to the 2⅓ years that he earned $109,000 annually. In fact, the trial court's calculation that 40% of his gross earnings should be subtracted in determining net income may well cover a portion of this liability.

into account the four months of unemployment and the switch from salary to commissions, we find that for the years ending in 1985 and 1986, Raymond's gross income averaged $75,000 per annum. In 1985, he reported income of $77,768. For the first eight months of 1986, he had grossed close to $50,000. Projecting the income for the remaining four months of 1986 based on this figure, ($50,000 divided by eight months equals $6,250 per month, times four months equals $25,000), we calculate an approximate annual income of $75,000 ($50,000 + $25,000) for 1986. To this gross earnings figure of $75,000, we will allow a 40% deduction to arrive at a net yearly income figure of $45,000.[3] Twenty-five percent of $45,000 is $11,250 per year or $937.50 per month, rounded off to $935.

We believe that the trial court, to be consistent with the evidence, should have awarded Nancy an increase of $935 per month instead of $850 for the period from June 16, 1985, to May 1, 1986.

■ The final provision of the order decreased Raymond's child support obligations to $600 per month, from May 1, 1986, forward, until further order of the court. From the trial judge's comments, it is clear that he intended to credit Raymond with some period of business indebtedness arising out of his IRS lien and attorney fee obligations. Pursuant to subsection 505(a)(3)(h) of the statute (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(3)(h)), the court may further deduct from net income of the supporting parent such amount as fairly reflects repayment of debts that represent "reasonable and necessary expenses" for the production of income. This subsection requires, however, that the "court shall reduce net income in determining the minimum amount of support to be ordered *only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(3)(h).) The trial court in this case neither set a period for such reduced payments nor provided for the return to the higher support level at the termination of the period.

■ As we previously noted, Raymond's evidence of business indebtedness was weak. He did not testify that he was currently paying any debts that were reasonable and necessary for the production of his income. Rather, he asserted a tax lien in an amount that is not clear from the record plus several thousands of dollars owed as attorney fees to his business attorney. Moreover, the provision allowing for

---

[3]We use the same 40% figure as did the trial court in calculating Raymond's net income for the first months of 1985, when Raymond was earning $100,000.

a business debt deduction contemplates a specified repayment schedule tracking the time "such payments are due," which was not presented in the evidence or in the trial court's order. We conclude that the record lacks a sufficient basis for crediting Raymond with a business expenditures deduction under section 505(a)(3)(h).

Accordingly, we hold that the monthly support payment of $935, based on our previous calculations, is the amount that Raymond is required to pay as child support, effective June 16, 1985. Assuming that he is current in support payments, the additional amounts he must pay Nancy are the difference between the amounts ordered by the trial court and this court, or $85 per month for the period from June 16, 1985, through April 30, 1986, and $335 for the months from May 1986 to the present. Raymond is then obligated to continue paying $935 per month.

## II

■ The remaining issue for our disposition challenges the award of attorney fees and costs to Nancy and the amount awarded.

We agree with the trial court that Nancy is entitled to some fees and costs and that Raymond caused her to "do a lot of digging" to ascertain his income; however, we do not agree that she is entitled to the full amount claimed. The trial court found that Raymond had lied under oath, a matter perhaps more appropriate for sanctions under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) than for an award of fees under section 508 of the Dissolution of Marriage Act. In any event, the trial court did review the fee petition, hear testimony, and consider argument of counsel. The court then exercised its broad discretion in setting the fee award. From the relevant trial transcript we infer that the court initially cut down the number of billed hours substantially and then cut the hourly billing rate in half, from $75 per hour to $35 per hour. The parties and the court discussed the cost items at some length and the court adjusted its initial assessment of fees and costs, finally awarding a total of $6,597, or $6,200 in fees and $397 in costs.

Nancy argues that much of the $25,000 in fees that she claimed was directly caused by Raymond's evasions and the fact that his three petitions for abatement of child support were groundless. He filed petitions stating that he was unemployed when in fact he was not. In addition, Nancy claims an additional $495 in costs, representing the expense of two depositions that were used at the trial.

On the attorney fee issue, we cannot state that the court clearly abused its discretion. We agree, however, that the cost of the two

depositions used at trial should have been included in Nancy's recoverable costs. Therefore, we award that additional item, bringing the total in fees and costs to $7,092.

For the foregoing reasons, we affirm the child support modification order of the trial court, as modified by this court, and remand for entry of an order in compliance with this opinion. The order should set forth the additional amounts Raymond now owes due to the increase in support payments. When that sum is calculated, the parties may agree or the court may direct payment of the additional amounts over time, in a lump sum, or in whatever manner is equitable under the circumstances.

Affirmed as modified and remanded.

JOHNSON and McMORROW, JJ., concur.