*In re* MARRIAGE OF BRENDA BURRIS, n/k/a Brenda Will, Petitioner-Appellee, and RANDY BURRIS, Respondent-Appellant.

Fifth District    No. 5—93—0600

Opinion filed June 21, 1994.

John D. Alleman, of R. Courtney Hughes & Associates, of Carbondale, for appellant.

John R. Clemons, of Clemons & Hood, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

This appeal involves the determination of child support obligations on behalf of Brenda and Randy Burris for the periods of time since their divorce during which each of the parties has had custody of their minor child, Robyn. We affirm.

On November 21, 1989, Brenda was awarded custody of Robyn, and Randy was ordered to pay Brenda rehabilitative maintenance for 30 months and child support of $550 per month. Brenda maintained physical custody of Robyn until about March 1, 1992, when Robyn began residing with her maternal grandparents, Lacey and Norma Dunn. On April 16, 1992, the judgment of dissolution was modified so that Randy's child support payments would thereafter be paid to Norma Dunn.

On or about February 7, 1993, Robyn moved in with her father, who continued to pay child support to Norma Dunn. Dunn returned the money to Randy each month. Based upon the change in circumstances of the parties, Randy filed a petition to modify which prayed for custody of Robyn and child support from Brenda. On June 4, 1993, before the petition to modify was heard, Robyn returned to live with her mother.

On June 3, 1993, Randy's union, the United Mine Workers of America, went on strike. Randy began receiving strike benefits of $150 per week. At the hearing on July 20, 1993, Randy testified that after 60 days into the strike he expected to receive benefits of $175 per week and after 120 days into the strike, $200 per week. On June 14, 1993, he filed a second count to his petition to modify and requested a decrease in his original child support obligation of $550 per month. In response to Randy's petition to modify, Brenda filed a petition to modify, which requested child support payments to be sent to her instead of Norma Dunn. Following a hearing on the petitions, the court ordered Brenda to pay Randy $25 per month as child support for the four-month period that Robyn resided with him. The court further found that Randy's gross income for 1992 was $55,520.27, and that he currently receives strike benefits of $150 per week. As the court found that there was no evidence as to when the strike would be resolved, it reduced Randy's child support to $150 per month. The court further ordered that when Randy's strike benefits increased to $200 per week, his support obligation would automatically increase to 20% of $200 per week.

The first issue on appeal is whether the trial court abused its discretion in determining that Brenda owed only $25-per-month child support for the four months that Randy had custody of Robyn. Randy argues that because Brenda was earning approximately $12,000 annually during the four months he had custody, the $25 child support award was grossly inadequate. Section 505(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (the Act) sets the minimum statutory amount of support for one child at 20% of the supporting party's net income. (750 ILCS 5/505(a)(1) (West 1992).) Only if the court imposes more or less than the minimum standard required under section 505(a)(1) is it required to consider the relevant factors of section 505(a)(2). *In re Marriage of Tatham* (1988), 173 Ill. App. 3d 1072, 1093, 527 N.E.2d 1351, 1363.

The relevant factors to be considered under section 505(a)(2) are the child's financial resources, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the parents remained married, the physical, emotional, and educational needs of the child, and the financial resources and needs of the noncustodial parent. 750 ILCS 5/505(a)(2) (West 1992); *In re Marriage of Baptist* (1992), 232 Ill. App. 3d 906, 917, 598 N.E.2d 278, 285.

Robyn attends public school. During the four-month period in which Randy had custody of Robyn, he earned an annual gross wage of $55,520. Brenda earned a gross income of approximately $15,000 a year. Brenda testified that while Robyn was living with her father, she stayed at Brenda's house on most weekends. Randy agreed that Robyn spent perhaps three weekends at his home in Cape Girardeau, Missouri, during this four months. Brenda testified that with the exception of two weekends when Robyn stayed with her, Brenda would drive from her job in Carbondale, Illinois, to Cape Girardeau, Missouri, to get Robyn, then on to Brenda's home in Pinckneyville, Illinois. Randy did not reimburse Brenda for mileage for these trips. During this four-month period Brenda continued to pay for Robyn's clothing and personal items and purchased Robyn's prom dress.

■ Modification of child support payments lies within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. (*People ex rel. Hines v. Hines* (1992), 236 Ill. App. 3d 739, 744, 602 N.E.2d 902, 906; *In re Marriage of Flemming* (1986), 143 Ill. App. 3d 592, 599, 493 N.E.2d 666, 671.) Section 505(a)(2) of the Act provides that the court may deviate from the established child support guidelines only after considering all of the relevant factors set forth in the statute. The record indicates that the trial court complied with this mandate. The court heard evidence

as to Robyn's needs and the parties' incomes and needs. It is apparent from the court's decision that the court considered the disparity in the parties' incomes and the facts that Robyn continued to spend most weekends with her mother and that Brenda continued to pay for Robyn's clothing, doctor's expenses, and personal needs. We cannot find that the trial court's award of $25-per-month child support was an abuse of discretion.

Randy next argues that the trial court abused its discretion by failing to make express findings as to its reasons for setting Brenda's child support obligation below the minimum statutory guideline. Section 505(a)(2) of the Act states:

> "If the court deviates from the guidelines, based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this Section, or any other relevant factor, it shall make express findings as to its reason for doing so. ***" (750 ILCS 5/505(a)(2) (West 1992).)

The requirement that the court make "express findings" does not mandate that the findings be written or incorporated into the court's order. *In re Marriage of Kern* (1993), 245 Ill. App. 3d 575, 577, 615 N.E.2d 402, 404; *In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, 567 N.E.2d 552.

■ At one instance the trial court stated, "But, what we have to look at, is what is for the best interest of the child in so far as maintaining as much as possible the standard of living that she is entitled to, if the parties were living together." In addition, the court mentioned the financial resources of the parties: "Now, talking about what Mrs. Will owes for the four months. Now, I look at the disparity between the two incomes. One was making $55,000 a year, and the other is making about $12,000 a year. During that period of time, I am not moved to allow great sums of money for that support." We find the court's statements sufficient to satisfy the statutory requirement for express findings.

The next issue for our review is whether the trial court abused its discretion in determining the amount of child support Randy was ordered to pay.

At trial Randy testified that since going on strike he received strike benefits of $150 per week. He testified that his strike benefits were due to increase to $175 per week 60 days into the strike and $200 per week 120 days into the strike. Randy testified that he has no investments, but he does have approximately $4,500 in a checking account and $7,000 in a money management account, which he accumulated through savings and from the proceeds of the sale of the marital residence following his divorce. While on strike Randy relies on the money management account to meet his expenses.

Randy testified that he is not engaged in any employment while on strike, and he is unable to meet his monthly living expenses on the money he receives from the strike fund. Since he remarried in February 1992, his new wife has paid the mortgage, taxes, and insurance on their residence. She is employed and her wages are used to meet expenses. Randy pays the utilities, the telephone bill, his car payment of $310 per month, car insurance for both him and his wife, and other living expenses. Although his income is considerably less than it was a year ago, his living expenses have not dramatically decreased.

Randy contends that the court erroneously ordered him to pay 20% of his net income without consideration of the relevant factors enumerated by section 505(a)(2). Section 510(a) of the Act provides that the provisions of any judgment respecting maintenance or support may be modified only upon a showing of a substantial change in circumstances. (750 ILCS 5/510(a) (West 1992).) Generally, the trial court's decision regarding modification proceedings will not be disturbed on review unless an abuse of discretion is shown. *In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 330, 547 N.E.2d 749, 751; *Cohn v. Cohn* (1984), 122 Ill. App. 3d 763, 461 N.E.2d 1028.

In a proceeding for modification of support, relevant factors the court may consider include, but are not limited to, those found in section 505(a)(2). Randy's income dropped from an annual gross salary of $55,520 to a net income of $150 per week. Randy testified that the length of the strike is indefinite and he is not certain whether he will in fact be called back to work even if the strike is resolved. Randy testified that he is unable to meet his monthly living expenses on the strike benefits he receives, yet his monthly expenses have not decreased. At the hearing below the trial court queried, "[I]f he is not going to have to reduce his standard of living any, then why should he reduce the standard of living of his daughter at $550 a month?" The trial court modified Randy's support obligation, setting his obligation at 20% of his net income, or $150 per month. The court also ruled that Randy may retain the child exemption/deduction for State and Federal income tax purposes.

The decision to modify child support payments rests within the sound discretion of the trial court. (*Webber*, 191 Ill. App. 3d at 330, 547 N.E.2d at 751.) The record indicates that the trial court was concerned that although Randy's income had drastically diminished, his standard of living had not. It is apparent from the court's comments that the court was apprehensive about reducing Randy's $550-per-month support obligation where Randy had not seen fit to reduce his discretionary expenses. Randy argues that the court failed

to consider all relevant factors in making its decision regarding modification of support. Without reiterating the evidence, we find that the court did consider the relevant factors of section 505(a)(2). We conclude that the trial court's determination that Randy should pay support according to the statutory minimum support guideline (see 750 ILCS 505(a)(1)) was not an abuse of discretion.

Randy next argues that the trial court failed to apply the statutory definition of net income when determining his income for purposes of child support. Randy contends that he must pay taxes on the strike benefits he receives. He is also paying $41.81 per month for Robyn's health insurance and $35 per month for life insurance on himself. Randy argues that not only were these figures not considered by the court in calculating Randy's support obligation, but they were deliberately disregarded.

■ Section 505(a)(3) of the Act defines net income as the total of all income from all sources, minus the deductions listed therein. (750 ILCS 5/505(a)(3) (West 1992).) The $35 per month Randy pays for life insurance is not one of the allowable deductions under section 505(a)(3). As for Randy's claim that he must pay taxes on the strike benefits, there is no evidence of this in the record. Randy attempted to introduce evidence of a discussion he had with his accountant regarding the possibility of having to pay taxes on the benefits, but the court sustained an objection to that testimony. Furthermore, Randy testified that the strike benefits come from a fund upon which taxes have already been paid.

Regarding Randy's payment of Robyn's health insurance premiums, however, this is an allowable deduction in determining net income. (See 750 ILCS 5/505(a)(3), (f) (West 1992).) Randy points out the following colloquy in support of his argument that the court intentionally refused to deduct the health insurance premiums in calculating Randy's net income.

"MR. ALLEMAN: Judge, have you considered the amount he is paying in mandatory health insurance and life insurance out of this money he is receiving?

THE COURT: Yes.

MR. ALLEMAN: It doesn't seem like he's got a deducting [sic] for it. If he is making $750 a month and he is paying 20% or $150.

THE COURT: I know. But it has dropped from $550 a month to $150 a month right now in child support. He can go on paying that.

MR. ALLEMAN: Okay.

THE COURT: Then we are going to let him claim the benefit of the child on his income tax returns."

It is apparent from this excerpt that the trial court was aware that the health insurance premiums were not deducted from Randy's income in calculating net income. We find the court's seemingly deliberate omission of the health insurance deduction harmless, however, in view of the court's award of the income tax deduction to Randy.

The final issue is whether the trial court's order violates section 510(a) of the Illinois Marriage and Dissolution of Marriage Act. The modification order provides in pertinent part:

"1. That beginning July 1, 1993 the defendant, Randy Burris, shall pay $150 per month as and for child support.

2. That when the defendant's strike benefits increase to $200 per week, he shall pay 20% of said amount as and for child support."

Randy argues that this automatic escalator clause deprives him of the statutory protection the Act provides by requiring the party seeking an increase in support to show a substantial change in circumstances. (See 750 ILCS 5/510(a) (West 1992).) We disagree.

Section 505(a)(5) of the Act states that the "final order in all cases shall state the support level in dollar amounts." (750 ILCS 505(a)(5) (West 1992).) Courts have construed this section to invalidate those support orders that automatically increase with age. *In re Marriage of Moore* (1983), 117 Ill. App. 3d 206, 208, 453 N.E.2d 102, 104; *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 647, 348 N.E.2d 507, 509.

In *Moore* the respondent was ordered to pay child support that increased every year as the child grew older. (*Moore*, 117 Ill. App. 3d at 208, 453 N.E.2d at 104.) The court compared the escalator clause it had before it with those that were upheld in the past and held that the clause in its case was improper. The court stated:

"Petitioner cites several cases in which courts have 'approved' automatic increases in the amount of support payable by the father. Unlike the present case, however, those cases do not involve an arbitrarily fixed increase triggered by nothing more than the passage of a year's time." *Moore*, 117 Ill. App. 3d at 209, 453 N.E.2d at 105.

In *McManus*, the trial court ordered the defendant to pay child support in steadily increasing amounts based on the age of the child. (*McManus*, 38 Ill. App. 3d at 646, 348 N.E.2d at 508.) The court held that the child support order was improper:

"In ordering the payment of child support, a circuit court must consider the needs of the child, the separate income of the wife, and the income of the husband. [Citations.] Because changes in

these facts cannot be anticipated with accuracy, a circuit court should ordinarily not try to anticipate such changes by making its award of child support to increase automatically with the child's age. [Citation.] The self-adjusting aspect of the award of child support must, therefore, be reversed." *McManus*, 38 Ill. App. 3d at 647, 348 N.E.2d at 509.

■ The amount of increase in support for Robyn is not dependent on her age. Rather, it increases along with the periodic increases in strike benefits that the appellant will receive. These increases are not speculative, and the specific dates of the increases are in the record. The court's order reflects that the increase in Randy's child support payments corresponds exactly with the actual strike-benefit increase that he will receive. This is a matter of certainty and not speculation.

Randy's argument that the automatic increase in child support payments will deprive him of the statutory protection, which requires Brenda to show a substantial change in circumstances before the judgment could be modified, is not applicable to the facts of this case. Randy was originally ordered to pay $550 per month in child support, before his support payments were lowered to $150 per month because of the strike. The amount of child support payments that the court ordered Randy to pay when it modified the original judgment was not based on any decrease in the amount of child support the child needs. Rather, it was based on the fact that Randy was out of work and only receiving strike-assistance benefits. There is no evidence in the record that Robyn's expenses have decreased. This is not the case where the future payments are based on the child's age or a possible cost-of-living increase. Rather, this order is based on a known specific increase in income that Randy will receive. The trial court's order that the child support payments will increase along with the known increase in Randy's strike benefits was not improper and did not violate section 505(a)(5) of the Act.

The judgment of the trial court is affirmed.

Affirmed.

RARICK and WELCH, JJ., concur.