*In re* MARRIAGE OF PAULA B. MINEAR, Petitioner-Appellee, and ROBERT E. MINEAR, Respondent-Appellant.

Fourth District    No. 4—96—0683

Argued March 11, 1997.—Opinion filed May 8, 1997.

COOK, J., dissenting.

H. Kent Heller and David Stevens (argued), both of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Mark T. Petty (argued), of Arcola, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In February 1994, petitioner Paula Minear filed a petition for dissolution of her marriage to respondent Robert Minear. In October 1994, the trial court granted the dissolution and entered the final judgment on remaining issues on August 28, 1996. Robert appeals, arguing the trial court abused its discretion by (1) disregarding certain depreciation expenses when the court calculated his net income, (2) failing to award him child support, (3) ordering him to pay Paula $500/month in maintenance, (4) distributing the marital property "equally to the last penny," and (5) ordering him to pay

part of Paula's attorney fees and part of her prospective attorney fees on appeal. We affirm.

The parties were married in 1975. When the dissolution proceedings began, Paula was 40 years old and Robert was 41. Two children were born, Melissa in 1978 and Michael in 1981. As Melissa reached her majority on July 21, 1996, no custody order was entered. Robert was granted custody of Michael, which is not disputed on appeal.

■ Robert disputes the trial court's calculation of his net income. Specifically, he argues the trial court should have reduced his net income by deducting certain depreciation expenses related to the operation of his service station. Using Robert's financial statement for the first nine months of 1995, the court added Robert's claimed depreciation expense of $10,873 (for the same nine months) to his base income in calculating net monthly income of $3,063.

Robert argues this depreciation expense should have been deducted from net income pursuant to section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(3) (West 1994)). Section 505(a)(3)(h) allows a deduction from net income for "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." 750 ILCS 5/505(a)(3)(h) (West 1994). Robert, relying on *Posey v. Tate*, 275 Ill. App. 3d 822, 656 N.E.2d 222 (1995), contends the trial court abused its discretion in not permitting the depreciation deduction.

In *Posey*, the trial court allowed the defendant to deduct depreciation expense from investment rental property from gross income to calculate child support. The First District Appellate Court, relying on section 505(a)(3)(h), found the trial court did not abuse its discretion in doing so. *Posey*, 275 Ill. App. 3d at 827, 656 N.E.2d at 226. The *Posey* court first looked to Black's Law Dictionary, which defined "depreciation" as follows:

" 'spreading out [of] the cost of a capital asset over its estimated useful life. *** A decline in value of property caused by wear or obsolescence and *** usually measured by a set formula which reflects these elements over a given period of useful life of property. [Citation.] [The] [c]onsistent, gradual process of estimating and allocating cost of capital investments over estimated useful life of asset in order to match cost against earnings.' " *Posey*, 275 Ill. App. 3d at 826, 656 N.E.2d at 225, quoting Black's Law Dictionary 441 (6th ed. 1990).

The court then held:

"[D]epreciation is not income, but a return of capital. To subject depreciation expense, which has been allowed as a deduction on a supporting parent's tax return, to child support would be to assess such support against capital instead of income. *** We therefore

find that the deduction of straight line depreciation expense from net income by defendant, a taxpayer who is obligated to pay child support, is fair and proper, where he has shown such a deduction to be a 'reasonable and necessary expense for the production of income,' and that it is subject to a specified repayment schedule, as contemplated by section 505(a)(3)(h)." *Posey*, 275 Ill. App. 3d at 826-27, 656 N.E.2d at 225-26.

We find the reasoning of *Posey* questionable, since the court found depreciation to be an "expenditure for repayment of debt." See 750 ILCS 5/505(a)(3)(h) (West 1994). "Expenditure" is defined as the "[s]pending or payment of money; the act of expending, disbursing, or laying out of money; payment." Black's Law Dictionary 577 (6th ed. 1990). "Payment" is defined as:

"The fulfil[l]ment of a promise, or the performance of an agreement. ***

*** [T]he performance of a duty, promise, or obligation, or discharge of a debt or liability, by the delivery of money or other value by a debtor to a creditor, where the money or other valuable thing is tendered and accepted as extinguishing debt or obligation in whole or in part." Black's Law Dictionary 1129 (6th ed. 1990).

"Debt" is defined as "[a] sum of money due by certain and express agreement. A specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment." Black's Law Dictionary 403 (6th ed. 1990).

Thus, while in some circumstances depreciation may be a "reasonable and necessary expense for the production of income" (see 750 ILCS 5/505(a)(3)(h) (West 1994)), it is not an "expenditure for repayment of debt" as those terms are defined. Further, section 505(a)(3)(h) states: "The court shall reduce net income *** only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." 750 ILCS 5/505(a)(3)(h) (West 1994). Depreciation expenses cannot reasonably be construed as "payments" subject to "payment periods" as required by the Act.

This court recently emphasized the significance of this language. In *Gay v. Dunlap*, 279 Ill. App. 3d 140, 664 N.E.2d 88 (1996), a case cited by neither party, the defendant deducted from his income $10,500 for car and truck expenses, as well as $1,075 for depreciation, legal and professional services, office expense, supplies, meals, and entertainment. In holding such business expenses not deductible under section 505(a)(3)(h) in determining the defendant's child support obligations, this court first distinguished the determination of

net income from the trial court's consideration of the " 'financial resources and needs of the non-custodial parent' " (*Gay*, 279 Ill. App. 3d at 146, 664 N.E.2d at 93, quoting 750 ILCS 5/505(a)(2)(e) (West 1992)) in deciding whether to apply the statutory guidelines:

> "A trial court decision about whether to apply the statutory guidelines involves carefully balancing many factors—not limited to those listed in the statute. (750 ILCS 5/505(a)(2) (West 1992).) The determination of net income, on the other hand, should be a straightforward, rigorous process. The legislature defined 'net income,' for purposes of the statute, as 'the total of all income from all sources,' minus the specifically enumerated allowable deductions, which it then proceeded to list." *Gay*, 279 Ill. App. 3d at 146, 664 N.E.2d at 93.

This court emphasized the legislature's clearly expressed intention to permit deductions only where an expenditure is made for the "repayment of debts":

> "Allowing day-to-day business expenses to be deducted under subsection (a)(3)(h) would ignore the language 'for repayment of debts.' The legislature could have enacted the statute without such language, but it chose to include it. We will not read this language out of the statute when the statute makes perfect sense with it included.
>
> Further, such a holding would also conflict with the second sentence of subsection (a)(3)(h), which provides:
>
> > 'The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period.' (750 ILCS 5/505(a)(3)(h) (West 1992).)
>
> This language would make no sense if business expenses, ongoing and variable from month to month, could be deducted." *Gay*, 279 Ill. App. 3d at 147, 664 N.E.2d at 93.

This court in *Gay* again distinguished the calculation of net income from the determination of child support:

> "[W]e note the purpose of subsection (a)(3) (including subsection (h)) is simply to define the noncustodial parent's net income. [Citation.] Subsection (a)(3) is not intended to determine what the 'fair' amount of child support is, nor does it have anything to do with how much child support is to be paid. All it does is define net income. Expenses which it would be improper to deduct under subsection (a)(3) can still play a role in a trial court's decision regarding departure from the statutory guidelines. ***
>
> We therefore hold only such expenses as constitute 'repayment

of debts' may be deducted from net income under the first clause of section 505(a)(3)(h) of the Act, and further hold nonreimbursed business expenses do not fit into this category." *Gay*, 279 Ill. App. 3d at 147-48, 664 N.E.2d at 94.

While *Posey* focused only on the requirement a deduction under section 505(a)(3)(h) be a "reasonable and necessary expense for the production of income" (see *Posey*, 275 Ill. App. 3d at 827, 656 N.E.2d at 226; see also *Rimkus v. Rimkus*, 199 Ill. App. 3d 903, 910, 557 N.E.2d 638, 643 (1990)), this court in *Gay* cautioned two hurdles must be overcome to claim the deduction:

> "[S]imply because an expense falls into the category of a debt repayment does not mean it is deductible. Qualifying as a repayment of debt is a necessary, but not a sufficient, condition for deductibility under subsection (a)(3)(h). Once this hurdle is overcome, the proponent of the deduction must also show the debts being repaid 'represent reasonable and necessary expenses for the production of income.'" *Gay*, 279 Ill. App. 3d at 148, 664 N.E.2d at 94, quoting 750 ILCS 5/505(a)(3)(h) (West 1992).

*Cf. In re Marriage of Heil*, 233 Ill. App. 3d 888, 599 N.E.2d 168 (1992) (one-half of mortgage payment, taxes, and insurance on hunting lodge utilized 50% of time for business deductible); *In re Marriage of Partney*, 212 Ill. App. 3d 586, 571 N.E.2d 266 (1991) (real estate investment losses improperly deducted from net income where it could not be shown to be reasonable or necessary to the production of income and could not be presented in a specified repayment schedule); *In re Marriage of Cornale*, 199 Ill. App. 3d 134, 556 N.E.2d 806 (1990) (monthly installment payments on real estate investment not properly deductible where there was no indication payments were reasonable and necessary for the production of income and where evidence disclosed property was not producing income at the time); *In re Marriage of Hart*, 194 Ill. App. 3d 839, 551 N.E.2d 737 (1990) (in *dicta*, trial court did not err in finding debt incurred in purchasing a plane as a business investment to be expenditure for repayment of debts); *In re Marriage of McBride*, 166 Ill. App. 3d 504, 519 N.E.2d 1095 (1988) (nonreimbursed business expenses properly not deducted from gross business income where trial court specifically found there was insufficient evidence expenses were necessary to generate income and parties had defined "net income" in settlement agreement without including nonreimbursed business expenses as deductions in the calculation of child support); *In re Marriage of Lefler*, 185 Ill. App. 3d 677, 685, 542 N.E.2d 1, 5 (1988) (business expenses disallowed as a deduction in calculating net income because provision allowing for a business debt deduction contemplates a specified repayment

schedule tracking time "such payments are due" and asserted expenses were not presented by way of such a specified repayment schedule); see generally Annotation, *Treatment of Depreciation Expenses Claimed for Tax or Accounting Purposes in Determining Ability to Pay Child or Spousal Support*, 28 A.L.R.5th 46 (1995).

Clearly, the trial court did not abuse its discretion here by adding Robert's claimed depreciation expense back to his income for purposes of determining child support and maintenance. First, the trial court did consider Robert's evidence of potential environmental liability at the service station, deducting $84,630 from the value of the business allocated to him, a reduction in his favor. However, Robert failed to present any evidence the claimed depreciation expenses were either "expenditures for the repayment of debts" or "reasonable and necessary expenses for the production of income," much less any specific repayment schedule as required by the Act. See 750 ILCS 5/505(a)(3)(h) (West 1994). In fact, there was no testimony, expert or otherwise, presented at trial as to the nature of these expenses. The expenses are mentioned only in one of Paula's exhibits, an "income statement" for Robert's service station. This exhibit shows $10,873 in claimed depreciation expenses for the first nine months of 1995, the figure used by the trial court in calculating Robert's net income. This minimal evidence is insufficient to justify a deduction under section 505(a)(3)(h). *Cf. In re Marriage of Holman*, 122 Ill. App. 3d 1001, 462 N.E.2d 30 (1984) (depreciation expense of $9,351 added back to service station owner's net business income in calculating maintenance award); *In re Marriage of Homann*, 276 Ill. App. 3d 236, 241, 658 N.E.2d 492, 496 (1995) (questioning the actual income-expense disparity of a spouse denied maintenance, where a $300/month automobile depreciation "expense" was claimed); *In re Marriage of McDonald*, 113 Ill. App. 3d 116, 118, 446 N.E.2d 559, 561 (1983) (rejecting the claim of petitioner, whose "substantial income" was reduced largely by depreciation expenses, he could not pay maintenance, noting "[u]nless [depreciation] be funded, it represents available funds").

Robert next contends the trial court abused its discretion when it refused to award him child support. He complains of the court's failure to find, pursuant to section 505(a)(2) of the Act, application of the statutory guidelines would be inappropriate and its failure to state the amount that would have been required under the guidelines and reasons for the variance. See 750 ILCS 5/505(a)(2) (West 1994). Paula contends this court should not consider the absence of express findings, since Robert never called this failure to the attention of the trial court. *In re Marriage of Harper*, 191 Ill. App. 3d 245, 547 N.E.2d 574 (1989). We agree with Paula.

In *Harper*, the petitioner alleged, as does Robert here, the trial court's failure to make express findings explaining the reasons for its departure from the statutory guidelines for child support required reversal. *Harper*, 191 Ill. App. 3d at 246, 547 N.E.2d at 575; see 750 ILCS 5/505(a)(2) (West 1994). As here, the issue was raised for the first time on appeal. This court refused to address the merits:

"Were we to do so, this case might be remanded with directions to the trial court to provide written findings in accordance with section 505(a). The trial court might then make those findings, certify them back to this court, and we might then find them to be entirely appropriate. It is even possible that plaintiff initially might have chosen not to pursue this appeal based upon the trial court's findings. The point is that judicial resources were wasted by plaintiff's appeal of this issue. This waste of resources could have been avoided had plaintiff, at the time the trial court rendered its decision or within 30 days thereafter, but asked for the written findings to which he claims to be entitled." *Harper*, 191 Ill. App. 3d at 246, 547 N.E.2d at 575.

For the same reasons, Robert cannot now challenge the trial court's alleged failure to make express findings in this case. See also *In re Marriage of Mohr*, 260 Ill. App. 3d 98, 631 N.E.2d 785 (1994); *In re Marriage of Kern*, 245 Ill. App. 3d 575, 615 N.E.2d 402 (1993) (waiver of trial court's failure to make express findings, following *Harper*); *In re Marriage of Baptist*, 232 Ill. App. 3d 906, 598 N.E.2d 278 (1992) (waiver of trial court's failure to make express findings, following *Harper*); but see *In re Marriage of Wright*, 212 Ill. App. 3d 392, 571 N.E.2d 197 (1991) (refusing to follow *Harper*).

Moreover, the trial court made adequate findings. The court found Paula's net monthly income to be $1,086 and Robert's to be $3,063. Based on this disparity, the court ordered Robert to pay Paula $500/month maintenance, and then concluded:

"[T]aking into consideration the amount of maintenance Respondent is hereby ordered to pay to the Petitioner, Respondent has a net income in excess of that of Petitioner and is not in need of child support from the Petitioner by reason thereof."

This was an express and sufficient finding satisfying the requirements of section 505(a)(2). See *In re Marriage of Burris*, 263 Ill. App. 3d 495, 499, 636 N.E.2d 71, 74 (1994) (trial judge's oral comment on the disparity of income between the parties prior to denying child support satisfied requirements of section 505(a)(2)); *Kern*, 245 Ill. App. 3d at 577, 615 N.E.2d at 404 ("the requirement that the court make 'express findings' (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2)) is not a requirement that the findings be written or incorporated into the court's order").

■ Robert next challenges the maintenance award. As noted, the trial court ordered Robert to pay Paula $500/month in periodic, indefinite maintenance "until further order of the court." The court based its award on Robert's superior earning capacity, Paula's inability to maintain herself "anywhere near the standard of living enjoyed by the parties during the course of their marriage," the length of the marriage, and the unlikelihood of Paula being able to substantially increase her earning capacity. The evidence here indicated Paula worked full-time as a medical receptionist at Carle Clinic. She took home approximately $1,086/month, and her monthly expenses were $1,920.

Robert challenges the amount and duration of the award. Robert suggests the trial court "did not discuss, or apparently even consider" the court's award to Paula of $98,452, exactly one-half the value of the marital property. However, it is well settled a spouse should not be required to sell or otherwise impair capital assets in lieu of maintenance, especially where the other spouse has sufficient income to meet both his needs and the needs of his spouse. *Homann*, 276 Ill. App. 3d at 241, 658 N.E.2d at 495; *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 379-80, 571 N.E.2d 1135, 1141 (1991). Moreover, Robert was awarded the service station, the major income-producing asset of the marriage.

Robert also alleges the trial court failed to consider "Paula's household had diminished from a family of four to a single person." However, maintenance is granted to a spouse to enable that person to maintain the lifestyle enjoyed prior to dissolution or an approximation thereof. The absence of children and Robert after dissolution is irrelevant to that determination.

Robert argues the trial court considered neither his ability to pay nor the standard of living during the marriage. Yet, the court's order of dissolution states it took into consideration the parties' disparate incomes and Paula's inability to maintain a lifestyle "anywhere near" the standard established during her marriage. We emphasize while "[o]ne notable goal of the Act is to make separating spouses financially independent[,] unfortunately, often this is not possible due to the limited resources of both parties." *In re Marriage of Koberlein*, 281 Ill. App. 3d 880, 885, 667 N.E.2d 695, 699 (1996); see also *In re Marriage of Gunn*, 233 Ill. App. 3d 165, 174-75, 598 N.E.2d 1013, 1020 (1992); *In re Marriage of Simmons*, 87 Ill. App. 3d 651, 661, 409 N.E.2d 321, 328 (1980). As to Robert's claim the trial court failed to consider Melissa's upcoming college expenses, no evidence was adduced at trial as to the nature and extent, if any, of such expenses, so the trial court's order is appropriately silent with respect to these speculative

"expenses." The trial court did not abuse its discretion in awarding Paula $500/month in maintenance. See *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 833, 633 N.E.2d 82, 95 (1994) (award of maintenance may not be disturbed absent an abuse of discretion).

■ Robert challenges the duration of the maintenance award, claiming it was error to award "permanent" maintenance with no provision for review. An award of maintenance is not permanent and may be modified upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a) (West 1994); *In re Marriage of Werries*, 247 Ill. App. 3d 639, 651, 616 N.E.2d 1379, 1389 (1993); *Gunn*, 233 Ill. App. 3d at 173, 598 N.E.2d at 1018. Where a spouse is employable at an income not overly disproportionate relative to the standard of living established during the marriage, limited maintenance is appropriate. *Werries*, 247 Ill. App. 3d at 652, 616 N.E.2d at 1390; see *Dunseth*, 260 Ill. App. 3d at 833, 633 N.E.2d at 95. On the other hand, where a spouse is not employable or is employable only at a low income compared to the previous standard of living, indefinite maintenance would be appropriate. *Werries*, 247 Ill. App. 3d at 652, 616 N.E.2d at 1390.

The trial court concluded it was unlikely Paula would be able to increase her income to a level approaching Robert's. These facts distinguish this case from those cited by Robert, *In re Marriage of Heller*, 153 Ill. App. 3d 224, 505 N.E.2d 1294 (1987), and *In re Marriage of Girrulat*, 219 Ill. App. 3d 164, 578 N.E.2d 1380 (1991). In *Heller*, the former wife was well-educated with "speculative" earning capacity due to a variety of employment skills she possessed, including culinary cooking skills and training as a travel agent. In *Girrulat*, the former wife was working 30 hours per week at $4 per hour, but there was evidence she would be obtaining a high school equivalency certificate, which would enable her to earn considerably more in the near future. In both cases, it was found to be error to award maintenance without a provision for review. *Heller*, 153 Ill. App. 3d at 236, 505 N.E.2d at 1301; *Girrulat*, 219 Ill. App. 3d at 169, 578 N.E.2d at 1383. Given the obvious distinctions between these cases and the instant case, we cannot say the trial court abused its discretion in awarding Paula indefinite maintenance.

■ Robert next contends the trial court abused its discretion when it distributed the marital property "exactly equally to the last penny." The trial court awarded Paula the marital residence ($49,000), certain cash and investment accounts ($24,813), household furniture ($10,025), a note receivable ($4,000), the couples' 1990 Grand Am automobile (value undetermined), and an equalizing payment from Robert ($10,615), for a total marital property award of

$98,453. The court awarded Robert the net value of the service station ($80,370, after deducting $84,630 in potential environmental liability), certain cash and investment accounts ($17,732), and various other property ($10,965), for a total marital property award of $98,453 (after considering the equalizing payment made to Paula).

Robert argues he, as the custodial parent, should have been awarded the marital residence. It is true an award of the marital home in favor of the custodial parent is normally preferred. See 750 ILCS 5/503(d)(5) (West 1994) (in dividing marital property, trial court must consider "the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children"); *In re Marriage of Zirngibl*, 237 Ill. App. 3d 1049, 1057, 606 N.E.2d 1, 6 (1991); *In re Marriage of Brenner*, 95 Ill. App. 3d 100, 102, 419 N.E.2d 400, 402 (1981). Yet this factor is but one of many a trial court must consider in apportioning marital property. See 750 ILCS 5/503(d) (West 1994). Here, it was entirely reasonable for the trial court to award Robert the service station, the major income-producing asset of the marriage, so he could continue to run it. Robert does not suggest how the trial court could have divided the remaining marital property fairly without awarding Paula the marital residence.

Robert refers to the trial court's equalizing payment as "bizarre." We see nothing "bizarre" about the trial court's attempt to apportion the marital property of the parties evenly through the use of an equalizing payment. See *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (1995) ("[w]hen awarding income-producing assets to one spouse becomes necessary, the trial court may achieve an equitable distribution by authorizing off-setting payments to the other spouse or by awarding a greater share of total marital assets to the spouse who does not receive the income-producing assets"); *In re Marriage of Jarvis*, 245 Ill. App. 3d 1007, 1013, 614 N.E.2d 1294, 1298 (1993) (where ex-husband was awarded income-producing assets of the marriage, award to ex-wife of double the value of marital property received by him obviated need for equalizing payments); *In re Marriage of Morrical*, 216 Ill. App. 3d 643, 645-46, 576 N.E.2d 465, 467 (1991); *In re Marriage of Hellwig*, 100 Ill. App. 3d 452, 459, 426 N.E.2d 1087, 1092 (1981). Equal distribution of marital property is generally favored, unless application of the statutory factors demonstrates an equal division would be inequitable. *In re Marriage of Moll*, 232 Ill. App. 3d 746, 755, 597 N.E.2d 1230, 1236 (1992). Here, while Robert has custody of Michael, he was awarded

the major income-producing asset of the marriage. Under these circumstances, we cannot say the trial court abused its discretion in splitting the marital property 50/50. *Cf. Moll*, 232 Ill. App. 3d 746, 597 N.E.2d 1230 (no abuse of discretion by trial court in awarding ex-husband 50% of marital property, where he was granted custody and ex-wife awarded family farm); *Heller*, 153 Ill. App. 3d 224, 505 N.E.2d 1294 (affirming 50/50 split of marital property based on disparity of incomes, despite ex-husband's protestations maintenance and child's tuition expenses consumed 50% of his income); *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 486 N.E.2d 267 (1985) (affirming 50/50 split of marital property).

■ Robert's final two arguments are related. He claims the trial court abused its discretion by ordering him to pay part of Paula's attorney fees incurred in the dissolution and part of her prospective fees on appeal. The trial court calculated Robert's income to be 73.82% of the parties' total income and ordered him to pay 73.82% of Paula's attorney fees. Paula had claimed $3,700 in legal fees arising from the dissolution and was awarded $2,781. Paula estimated her legal fees on appeal would be $3,000 and asked for an award of $2,000. The trial court, noting Paula requested less than 73.82% of her prospective attorney fees ($2,215), granted her request.

Robert argues there was no showing of either Paula's inability to pay her attorney fees or his ability to pay. As a general matter, attorney fees are the primary responsibility of the person for whom the services are rendered. *Werries*, 247 Ill. App. 3d at 655, 616 N.E.2d at 1392. Pursuant to section 508 of the Act, however, the trial court may, in its discretion and after consideration of the financial resources of the parties, order one spouse to pay all or part of the other's attorney fees arising out of dissolution proceedings. See 750 ILCS 5/508(a) (West 1994); *In re Marriage of Kennedy*, 214 Ill. App. 3d 849, 861, 573 N.E.2d 1357, 1365 (1991). Section 508(a)(3) also expressly authorizes a prospective award of attorney fees to a party for the defense of an appeal. 750 ILCS 5/508(a)(3) (West 1994); *In re Marriage of Talty*, 166 Ill. 2d 232, 240, 652 N.E.2d 330, 334 (1995); *In re Marriage of Brent*, 263 Ill. App. 3d 916, 928, 635 N.E.2d 1382, 1390 (1994); *cf.* Pub. Act 89—712, eff. June 1, 1997 (amending 750 ILCS 5/508(a) (West 1994)) (permitting awards of interim attorney fees or contributions to attorney fees and costs as well). Either award of attorney fees requires the party seeking fees to demonstrate an inability to pay and the ability of the other spouse to meet the obligations of both. *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 595, 615 N.E.2d 1165, 1178-79 (1993); see *Talty*, 166 Ill. 2d at 242, 652 N.E.2d at 335; *cf.* Pub. Act 89—712, eff. June 1, 1997 (adding 750 ILCS

5/501(c—1)(3) (West 1994)) (permitting award of interim attorney fees from time to time while a case is pending, based upon the same criteria). Yet financial inability to pay does not demand a showing of destitution, and the fee-seeking spouse is not required to divest himself of capital assets before requesting fees. *Kennedy*, 214 Ill. App. 3d at 861-62, 573 N.E.2d at 1365. It is sufficient to show payment would exhaust his estate or strip him of his means of support or undermine his economic stability. *Phillips*, 244 Ill. App. 3d at 595-96, 615 N.E.2d at 1179.

The trial court based its award of attorney fees on the disparate income of the parties, an approach Robert repeatedly refers to as "cavalier." However, even with the $500/month maintenance award, Robert's net monthly income was almost $1,000 more than Paula's. Robert again complains all of Melissa's upcoming college expenses were "dumped on" him, but the trial court's order did not address this subject. Robert complains of the trial court's use of the parties' relative incomes in determining the proportion of Paula's attorney fees he should pay. However, whether one spouse's attorney fees should be paid by the other spouse and what proportion of these fees is to be paid are decisions that lie within the sound discretion of the trial court. *In re Marriage of Blazis*, 261 Ill. App. 3d 855, 870, 634 N.E.2d 1295, 1305 (1994); *Phillips*, 244 Ill. App. 3d at 596, 615 N.E.2d at 1179; *cf.* Pub. Act 89—712, eff. June 1, 1997 (adding 750 ILCS 5/503(j)(5) (West 1994)) (where one party petitions for contribution for fees and costs from the other party, contribution award "may be in the form of either a set dollar amount or a percentage of fees and costs (or a portion of fees and costs)"). We find no abuse of this discretion here.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

GARMAN, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent.

Why should we even be concerned with whether depreciation expense should have been deducted from Robert's net income under section 505(a)(3) of the Act? Section 505(a)(3) deals with child support, and Robert has not been ordered to pay child support. Robert was ordered to pay maintenance and attorney fees. I question whether section 505(a)(3)'s definition of net income has any bearing on maintenance or attorney fees. I address the issue, however, because it is addressed in the majority opinion.

For the reasons set out in my separate opinion in *Gay* (279 Ill. App. 3d at 150-52, 664 N.E.2d at 95-96 (Cook, P.J., concurring in part and dissenting in part)), I disagree with the majority's conclusion that section 505(a)(3) provides a comprehensive listing of the deductions that may be taken in determining income or net income. The section may work satisfactorily for employees who receive a paycheck, but it cannot be rigidly applied to determine the income of self-employed individuals. As I understand the majority opinion, a self-employed individual may deduct expenses such as cost of goods sold, rent, utilities, and secretarial help *only* if he jumps through the hoops of section 505(a)(3)(h) and shows that those expenses are in the form of debts which are being repaid and will be paid off at some definite time. A self-employed individual who pays these expenses as they come due is not liable for the "repayment of debt" and is accordingly not entitled to a deduction under the majority's view. Even if the expenses are paid sometime after they become due, and there is accordingly a "debt" for some period of time, there cannot be a deduction for continuing expenses because such expenses never terminate.

That result cannot be correct and is not the way income is calculated in practice. Even in *Gay*, the self-employed realtor was allowed to deduct expenses such as rent, utilities, and secretarial help because those items were subtracted from the check given him by Coldwell Banker, and we did not look past that check to his total commissions, despite section 505(a)(3)'s admonition that we begin with "the total of all income from all sources," and subtract only the listed deductions. 750 ILCS 5/505(a)(3) (West 1994). Perhaps some sense can be made of section 505(a)(3) by the explanation that the section addresses only net income and that additional deductions are allowed in determining gross income. As a matter of accounting, cost of goods sold is deducted in determining gross income. Section 505(a)(3) is not a comprehensive statement of what constitutes income, but is a statement of legislative intent to limit the deductions that may be made in calculating net income for purposes of calculating child support.

I agree, however, that a circuit court is not required to deduct depreciation in determining net income for purposes of the child support guidelines. While tax law principles may be useful in determining what net income is available for child support, they are not controlling. *Ivanyi v. Granoff*, 171 Ill. App. 3d 411, 421-22, 526 N.E.2d 189, 197 (1988) (refusing to consider items which defendant was required to report on his tax return but did not in fact receive). What is important is not what is shown on the tax return, but the individual's current ability to pay child support.

I disagree with the majority's decision that Robert is not entitled to child support from Paula because Robert has more income than Paula does. A child is entitled to the support of *both* of his parents. *In re Marriage of Duerr*, 250 Ill. App. 3d 232, 238, 621 N.E.2d 120, 125 (1993); *In re Marriage of Maczko*, 263 Ill. App. 3d 991, 994, 636 N.E.2d 559, 562 (1992); see also 750 ILCS 5/505(a) (West 1994) ("the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support"). The argument that a payor of child support should receive some sort of reduction when the custodian has income has repeatedly been rejected. See *Kern*, 245 Ill. App. 3d at 579, 615 N.E.2d at 405; *In re Marriage of Blaisdell*, 142 Ill. App. 3d 1034, 1047, 492 N.E.2d 622, 630 (1986). Assuming that Robert's net income is $3,063, and that Paula's is $1,086, and that the child receives support at the guidelines amount from both, the child would receive $829.80 of support per month. I do not see that as excessive.

The circuit court attempted to divide the property equally between the parties. In doing so the circuit court awarded Paula the residence, the furniture, the automobile, the accounts, and an equalizing payment ($10,615), all of which totalled $98,453. Robert was also awarded $98,453, but $80,630 of his award came from the service station he operated. Robert was then given custody of the minor child, but no child support.

There is a double counting problem here. Paula can sell all the property she was awarded and still have a monthly income of $1,086. Robert's monthly income of $3,063 is dependent on his continued ownership of the service station. Robert cannot sell the service station and buy a residence, for example. Some portion of Robert's $3,063 is not income from employment, but a return on capital. When the circuit court considered the full amount of the $3,063 in awarding maintenance, but awarded the service station to Robert as the major portion of Robert's property division, it erroneously counted the same asset twice. See *In re Marriage of Zells*, 143 Ill. 2d 251, 256, 572 N.E.2d 944, 946 (1991); *Talty*, 166 Ill. 2d at 236-40, 652 N.E.2d at 332-34. The court compounded the error when it required Robert to pay a portion of Paula's attorney fees corresponding to his share of the parties' total income (73.82%). (Why was Paula not required to pay 26.18% of Robert's attorney fees?) This was not just a case of double counting, but of triple counting. I question whether Robert would have much greater income potential than Paula if he no longer had the service station.

The majority justifies the award of attorney fees by citing *Kennedy* for the proposition that Paula is not required to divest

herself of capital assets before seeking fees. That rule does not apply, however, if Robert would likewise be required to divest himself of capital assets in order to pay attorney fees. *Kennedy*, 214 Ill. App. 3d at 861, 573 N.E.2d at 1365 (spouse seeking fees must establish financial ability of other spouse to pay them). There is not a lot of money in this case. It seems clear that both parties will be required to invade their capital assets, and there is no justification for shifting Paula's fees to Robert.

I would reverse the circuit court's order as it relates to child support, maintenance, property division, and attorney fees, and remand for reconsideration and the entry of an order in accord with the views expressed herein.