*In re* MARRIAGE OF DONALD CAMPBELL, Petitioner-Appellant, and ANDREA PROVENZANO CAMPBELL, Respondent-Appellee (Paul Shuldiner *et al.*, Appellees).

First District (2nd Division)   No. 1—90—3546

Opinion filed December 28, 1993.—Rehearing denied January 27, 1994.

Joel Ostrow, of Chicago, for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellee Andrea Provenzano Campbell.

Law Office of Paul R. Shuldiner, of Chicago (Mary Kellner, of counsel), for other appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Petitioner, Donald Campbell (Donald), appeals various court orders resulting from the dissolution of his marriage to respondent, Andrea Provenzano Campbell (Andrea). He presents as issues for review whether (1) the awards of attorney fees are contrary to law; (2) the child visitation provisions are against the manifest weight of the evidence; and (3) the order that he pay a percentage of his income as child support, rather than a precise amount, is contrary to law.

Donald and Andrea have a daughter, Ashleigh, who was born on August 21, 1984, prior to the couple's marriage. Donald and Andrea had discontinued their relationship prior to Ashleigh's birth, and Donald had no contact with Andrea or Ashleigh until March 1987, when the couple reunited. Donald and Andrea were married on August 1, 1987. Andrea and Ashleigh took up residence in Donald's home. Donald filed a petition for dissolution of marriage on December 2, 1987.

On March 17, 1988, Donald filed his first motion for leave to sell the residence, claiming it was nonmarital property and that he could not afford to maintain it since he and Andrea were living separate and apart. That same day, Andrea filed both her response to the petition for dissolution and a petition for an order of protection alleging physical and verbal abuse by Donald. Donald's answer denied the alleged abuse.

A series of agreed orders was entered. Andrea was granted an order of protection, exclusive possession of the residence, and temporary custody of Ashleigh; Donald was granted unsupervised visitation with Ashleigh from 10 a.m. to 6 p.m. on certain, specified dates. The

order of protection was entered by agreement and without a finding of abuse.

On May 17, Donald moved to set a visitation schedule with Ashleigh. Andrea's response claimed that Donald had shown no interest in Ashleigh before their marriage, failed to take proper care of Ashleigh, and had adversely impacted Ashleigh's behavior. On July 14, appellee Paul Shuldiner filed his additional appearance on behalf of Donald. The same day the court granted Donald's motion to sell the residence.

At a hearing on July 27, Andrea testified that Donald slammed doors in a fit of anger, nearly missing Ashleigh's face; threw a toy baseball bat towards the floor hitting Ashleigh; masturbated in the marital bedroom after Andrea put Ashleigh in their bed to sleep; and handled and jiggled his penis in Ashleigh's presence. Andrea intended never to allow overnight visitation between Donald and Ashleigh, but did not intend to prevent other extended visitation. In explaining why she felt overnight visitation was inappropriate, Andrea did not mention a fear of abuse. Donald testified and denied Andrea's allegations.

On July 28, the court, noting Andrea's uncorroborated allegations of abuse, set a visitation schedule granting Donald supervised overnight visitation with Ashleigh twice each month and unsupervised evening visitation with Ashleigh once each week.

Andrea moved for clarification of the court's order that the residence be sold. Donald filed an answer and moved for possession of the residence asserting that Andrea was obstructing realtors in their efforts to sell it. Donald also filed a rule to show cause petition alleging that Andrea had verbally and physically harassed him and had failed to comply with the visitation schedule. The court entered a more specific order regarding the sale of the residence. After several motions were filed and two additional hearings were held, the court found Andrea in contempt for violating the visitation order and placed her on six months' probation.

Donald filed several additional motions claiming that Andrea was preventing the sale of the residence.

On May 11, 1989, Andrea filed a petition for removal from the State of Illinois, requesting that she be allowed to return to Massachusetts with Ashleigh, where they could reside with Andrea's parents as they had done prior to the marriage. The petition offered Donald a specific schedule of visitation including certain holidays and three weeks each summer as well as visitation with Ashleigh in Massachusetts as agreed upon by the parties. The circuit court granted Andrea temporary permission to return to Massachusetts with Ashleigh.

On June 6, the court ordered Andrea to vacate the residence during specified times each week so that realtors could sell the home. A violation would cause an immediate order to issue that she permanently vacate the home.

At an *ex parte* hearing on June 7, an unidentified person representing the Department of Children and Family Services (DCFS) requested that Donald's visitation with Ashleigh be terminated immediately because a felony warrant had been issued for his arrest for sexually abusing Ashleigh. That same day, Andrea filed an emergency petition to terminate visitation, alleging that (1) Andrea had taken Ashleigh to the child's regular pediatrician, who examined her and found her to have an enlarged clitoris and rectum; (2) Evanston Hospital made further examinations and contacted DCFS about the possibility of sexual abuse; and (3) DCFS and the Evanston police department conducted a joint investigation which resulted in the felony warrant being issued for Donald's arrest.

On June 9, Donald told the court he had conducted emergency discovery and was in possession of (1) the notes of Ashleigh's pediatrician, which stated that her clitoris and rectum were normal; (2) a record from Evanston Hospital which indicated that no examination of Ashleigh was conducted there; and (3) the felony warrant issued for Donald's arrest, which was for child pornography and not sexual abuse.

Andrea subsequently modified her petition to terminate visitation and alleged that after she showed Ashleigh's pediatrician nude pictures of Ashleigh, he discussed with her the ease of entry into the child's rectum and periodic episodes of an enlarged clitoris, and referred her to Evanston Hospital.

On June 20, a new attorney appeared for Donald replacing Shuldiner. Subsequently, Shuldiner filed a motion for fees which sought $7,688.59 for services rendered in "divorce and criminal" matters.

On October 26, Donald's counsel informed the court that the criminal charges against Donald had been dropped with a finding of no probable cause.

On February 7, 1990, trial commenced with Donald being represented by appellees Leonard T. Timpone and William R. Jacobs. Andrea testified that she and then five-year-old Ashleigh were living in Massachusetts with her parents pursuant to the court's temporary order. After Ashleigh's birth until 1987, Donald had no contact with Andrea or Ashleigh. Andrea had sent Donald a birth announcement in 1984. Andrea had no objection to Donald visiting with Ashleigh as long as it was in Massachusetts with a court-appointed supervisor and was not overnight. She would not allow Ashleigh to visit in Chicago until she became eight or nine years old.

Andrea further testified that she saw Donald throw a suitcase which landed on Ashleigh, masturbate in bed while Andrea and Ashleigh were in bed with him, masturbate in bed while Ashleigh was alone in bed with him, flip his penis in front of Ashleigh several times, and slam a door near Ashleigh's face. Ashleigh had witnessed Donald hit and choke Andrea. During this time period, Andrea twice left Donald alone with Ashleigh.

Donald testified that Andrea first told him about Ashleigh in March 1987 and he then flew to visit them in Massachusetts. He denied throwing a suitcase, striking Ashleigh, hugging Ashleigh in a sexual manner, taking pictures of Ashleigh unclothed, and violating visitation orders. The last time he saw Ashleigh was June 3, 1989, ten months earlier. Prior to their last visit, Donald saw Ashleigh twice per week for over one year and he believed their relationship was "outstanding."

Donald wished to resume visitation with Ashleigh immediately and would not object to doing so in his parents' home. He preferred to have weekly visitation in Illinois. If the court granted Andrea's request to stay in Massachusetts, he would like monthly visitation with an additional week each summer. He objected to Andrea and Ashleigh living in Massachusetts because "for all practical purposes, I will not see my daughter again."

The circuit court granted a judgment for dissolution of marriage on April 26, 1990, and reserved jurisdiction to resolve remaining issues.

On May 31, the report of Dr. Robert Bussel, the court-appointed psychiatrist, was read into the record. He recommended that Donald have supervised visitation in Massachusetts until Ashleigh turns eight years old. At that time, the situation should be reevaluated to determine whether Ashleigh could visit her father in Chicago. A statement from Donald's personal psychotherapist, Dr. Rozenzweig, was also read into the record. He determined through the course of Donald's therapy that Donald is a caring father who wishes to have a normal relationship with his daughter. He recommended that Donald be granted visitation with Ashleigh in Illinois.

On June 5, the court ordered the net proceeds from the sale of the residence to be held in escrow by Timpone. The amount of the net proceeds was later determined to be $59,081.81.

On August 14, the court granted Jacobs' and Timpone's motions to withdraw as Donald's attorneys. The escrowed funds were transferred to the clerk of the court. Jacobs filed his petition for fees, requesting $909. Timpone filed his petition for fees in which he sought $4,224.75 on August 17. On August 28 Timpone filed an amended petition, requesting $7,579.50.

Roger A. Rubin of appellee Pretzel & Stouffer, Andrea's attorney, filed a petition for fees which requested that Donald be ordered to pay it $15,849.90 for Andrea's attorney fees.

The court conducted a hearing on Shuldiner's, Jacobs', and Timpone's attorney fee petitions on September 17 with Donald representing himself *pro se*. A memorandum of prove up appears in the record in which Shuldiner requests that he be awarded $10,565.84. At the hearing, Shuldiner told the court his secretary made a typographical error and the amount he was claiming was $8,565.84. Because it ran out of time, the court set a hearing on Pretzel & Stouffer's petition for November 16.

On September 18, the circuit court awarded $8,565.84 to Shuldiner, $909 to Jacobs, and $6,424.50 to Timpone.

On October 22, Pretzel & Stouffer filed an amended petition for fees seeking $23,111. At the November 16 hearing, Rubin represented to the court that it previously had found that Andrea did not have the ability to pay her attorney fees and Donald had the ability to pay those fees; therefore, the court only needed to determine the reasonableness and necessity of those fees.

In a supplemental order dated November 16, the circuit court (1) found the residence to be Donald's nonmarital property and awarded him all of the funds from its sale; (2) found that Andrea could not afford to pay Pretzel & Stouffer $23,111 in attorney fees and ordered Donald to pay those fees; (3) ordered the clerk of court to pay from Donald's funds held in escrow the attorney fees awarded Shuldiner, Jacobs, Timpone, and Pretzel & Stouffer, which totaled over $38,000; (4) ordered visitation pursuant to the report of Dr. Bussel, the court-appointed psychiatrist; (5) awarded Andrea sole custody of Ashleigh subject to the visitation rights of Donald, which visitation shall be supervised and shall occur in Massachusetts; (6) ordered Andrea and Donald to attempt to reach an agreement relative to the times, dates, places and an appropriate supervisor for said visitation, and if they are unable to do so, a court of competent jurisdiction shall determine such; and (7) ordered Donald to pay in child support 20% of his net income as defined by section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3) (now 750 ILCS 5/505(a)(3) (West 1992))), less half of Ashleigh's social security benefits. Donald appeals.

# I

Donald initially challenges the circuit court's award of attorney fees as contrary to applicable law.

The amount of attorney fees awarded is in the circuit court's

discretion and will not be reversed absent an abuse of that discretion. *In re Marriage of Landfield* (1991), 209 Ill. App. 3d 678, 705, 567 N.E.2d 1061.

## A

Donald claims the court merely rubber-stamped the petitions for fees as submitted by the attorneys and failed to consider the appropriate factors.

In awarding attorney fees, the factors to be considered are the skill and standing of the attorneys, the nature of the controversy, the novelty and difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community, and the benefits resulting to the client. *In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 660, 506 N.E.2d 1000.

Donald maintains that he attempted to question the attorneys concerning these factors, but the court repeatedly told him that the only issue was whether the time expended was reasonable and necessary. Donald concludes that the court failed to conduct the appropriate hearings as he was not allowed to demonstrate that the fees were excessive in light of the above factors; rather, the court placed him in the hapless position of trying to prove that the attorneys did not perform the services or spend the amount of time listed in their respective petitions.

■ This claim is without merit except as to Pretzel & Stouffer, which is discussed later in this opinion. The record reveals that the circuit court here conducted extensive hearings on the issue of attorney fees and gave Donald every opportunity to cross-examine the witnesses regarding the above factors. Any disadvantage Donald may have experienced was not the result of improper action by the court, but the result of Donald's choice to proceed at the hearings *pro se*. The circuit court considered the proper factors when it awarded attorney fees to Shuldiner, Jacobs, and Timpone.

## B

■ Donald additionally argues he received no benefit from any of the attorneys' services. He complains that he has no visitation with his child, that the attorneys stripped him of the equity in his home to pay their fees, and that the attorneys were unable to get Andrea out of the home despite numerous orders she vacate. Citing *In re Marriage of L.R.* (1990), 202 Ill. App. 3d 69, 85, 559 N.E.2d 779, as holding that fees have some predicate in success, he argues that the

fees awarded should have been minimal because the attorneys were unsuccessful. Donald's characterization of his attorneys' performance is belied by the record. He currently has some visitation with his daughter and Andrea eventually was removed from the residence. We therefore reject this argument.

## C

Donald correctly notes that, under the Act, a court may not order a marital asset sold in order to satisfy attorney fee obligations. (*In re Marriage of Walsh* (1982), 109 Ill. App. 3d 171, 176-77, 440 N.E.2d 310.) He claims that the attorneys caused this exact result here, as the funds from the sale of his nonmarital residence were escrowed until the court ordered the attorney fees to be paid from his escrow account. None of the appellees address this contention.

Section 508(c) of the Act provides:

"The court may order that the award of attorney's fees and costs hereunder shall be paid directly to the attorney, who may enforce such order in his name, or that they be paid to the relevant party. Judgment may be entered and enforcement thereof had accordingly." Ill. Rev. Stat. 1991, ch. 40, par. 508(c) (now 750 ILCS 5/508(c) (West 1992)).

In *Walsh*, the circuit court ordered that stock, a marital asset, be sold in order to satisfy directly the payment of attorney fees. (*Walsh*, 109 Ill. App. 3d at 176.) The appellate court reviewed section 508(c) and held that it did not empower the court to order an asset sold for the direct payment of fees. (*Walsh*, 109 Ill. App. 3d at 177.) It concluded that the marital stock should have been apportioned according to the Act. *Walsh*, 109 Ill. App. 3d at 177.

■ Here, the circuit court ordered the proceeds from the sale of the residence, $59,081.81, to be held in escrow until it determined whether the residence was marital or nonmarital property. It later found the residence to be Donald's nonmarital property. The court then ordered that Donald pay attorney fees totaling over $38,000 to Shuldiner, Jacobs, Timpone, and Pretzel & Stouffer and directed that Donald's escrowed funds be disbursed to the attorneys directly. This case is unlike *Walsh*, as the court here did not order the residence to be sold in order to satisfy the payment of attorney fees. Donald voluntarily sold his residence. Once it was determined that the funds from the sale belonged solely to Donald, the court merely directed that the funds be disbursed to the attorneys directly. Consequently, Donald's contention fails.

## D

Donald contends that the awards of attorney fees to Shuldiner,

Jacobs, and Timpone were against the manifest weight of the evidence. As discussed earlier in this opinion, the circuit court here determined the amounts of the awards only after conducting extensive hearings. Donald's complaints of restricted cross-examination are without merit. Nevertheless, Donald raises other contentions which must be addressed.

Donald submits that Shuldiner's fee petition was sketchy at best and that such improper documentation cannot be used as a basis for his $8,565.84 award. A review of the fee petition reveals that almost $5,000 in charges is simply itemized as "PREVIOUSLY BILLED." Shuldiner correctly responds that he filed a memorandum of prove up with an affidavit which itemized the services provided. We find the documentation adequate.

Donald next alleges that the circuit court's award of attorney fees for the work Shuldiner performed in defending him from criminal accusations was error. We agree.

■ Section 508 of the Act provides the circuit court with the authority to award attorney fees in connection with the proceedings under the Act. (Ill. Rev. Stat. 1991, ch. 40, par. 508 (now 750 ILCS 5/508 (West 1992)); *In re Marriage of Birt* (1987), 159 Ill. App. 3d 281, 282-83, 512 N.E.2d 390.) As a result, ordinarily, a court hearing dissolution proceedings does not have subject matter jurisdiction to award attorney fees rendered in any case other than the one proceeding before it. (*In re Marriage of Burton* (1990), 203 Ill. App. 3d 890, 894, 561 N.E.2d 180.) For example, in *Burton*, the appellate court specifically found that the circuit court had no jurisdiction in a dissolution case to order fees for work performed in the opposing spouse's bankruptcy action. (See *Burton*, 203 Ill. App. 3d at 894.) Similarly, here, the court had no jurisdiction in this dissolution case to award Shuldiner fees for work performed in Donald's criminal case, which was proceeding in a different court totally independent of the dissolution case. Accordingly, we reverse that portion of Shuldiner's award. We remand to the circuit court for a determination of the exact dollar amount involved.

In doing so, we reject Shuldiner's contention that he did not request fees under section 508 of the Act. His memorandum of prove up specifically states that he was petitioning for fees pursuant to section 508. We also reject his claim the criminal work was so intertwined with the dissolution proceedings that it was proper to award fees. He cites *In re Marriage of Armstrong* (1982), 107 Ill. App. 3d 217, 437 N.E.2d 761, in support. *Armstrong*, however, is inapposite because this issue never was raised. (See *Armstrong*, 107 Ill. App. 3d at 218-21.) In any event, the criminal proceedings concerning Donald

were not so intertwined with the dissolution proceedings that the award of fees was proper. See *Burton*, 203 Ill. App. 3d at 894.

## E

Donald argues that the circuit court ordered him to pay Andrea's attorney fees without conducting the required hearing.

The allowance of attorney fees in a dissolution proceeding depends on a showing that one spouse is unable to pay the fees, although the other is able to do so. (*Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 814, 375 N.E.2d 961.) A court should hear evidence of one spouse's needs and the other's ability to pay. *Lewanski*, 59 Ill. App. 3d at 814.

■ Here, the court conducted a hearing on Shuldiner's, Jacobs', and Timpone's attorney fee petitions on September 17. This hearing did not involve Donald's payment of Andrea's attorney fees, but only his payment of his own attorney fees. The court set a hearing on Pretzel & Stouffer's petition for November 16 because it ran out of time. At the November 16 hearing, Rubin mistakenly represented to the court that it previously had found that Andrea did not have the ability to pay her attorney fees and Donald had the ability to pay those fees; therefore, the court only needed to determine the reasonableness and necessity of those fees. The circuit court unwittingly accepted this representation as true and conducted the hearing in that manner. Because no evidence was ever submitted in regard to Andrea's inability to pay and Donald's ability to pay, we reverse the $23,111 award of fees to Pretzel & Stouffer and remand for reconsideration of this fee award. We also note our strong disapproval of Rubin's misrepresentation to the court below.

## II

Donald next argues the visitation provision was contrary to the manifest weight of the evidence.

Sound public policy encourages the maintenance of the parent-child relationship, and only in extreme circumstances may courts deprive a parent of visitation. (*In re Marriage of L.R.* (1990), 202 Ill. App. 3d 69, 85, 559 N.E.2d 779.) A parent is entitled to reasonable visitation rights unless the custodial parent proves, by a preponderance of the evidence, that without a restriction of visitation, the child's physical, mental, moral or emotional health will be seriously endangered. (*In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 687, 474 N.E.2d 911; Ill. Rev. Stat. 1991, ch. 40, par. 607(a) (now 750 ILCS 5/607(a) (West 1992)).) The circuit court is vested with wide discretion in resolving visitation issues, and a reviewing court will

not interfere with the circuit court's determination in the absence of an abuse of discretion, or unless manifest injustice has been done to the child or parent. *In re Marriage of Diehl* (1991), 221 Ill. App. 3d 410, 429, 582 N.E.2d 281.

■ In the case at bar, Donald was granted visitation with Ashleigh pursuant to the report of the court-appointed psychiatrist. Donald's supervised visitation with Ashleigh was to occur in Massachusetts until Ashleigh turns eight years old. At that time, the visitation arrangement is to be reevaluated to determine whether Ashleigh may visit with her father in Chicago. We have reviewed the record in this case and find no abuse of discretion in the circuit court's resolution of visitation issues. We therefore affirm that portion of the order.

## III

Donald lastly contends that the circuit court's order he pay a percentage of his income as child support, rather than a precise amount, is contrary to applicable law.

Section 505(a)(5) of the Act expressly provides that the final child support order in all cases "shall state the support level in dollar amounts." (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(5) (now 750 ILCS 5/505(a)(5) (West 1992)).) A circuit court errs where it fails to state a child support obligation in a specific dollar amount and, instead, states it as a percentage of the obligor spouse's net income. *In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, 696, 567 N.E.2d 552, citing *In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 519 N.E.2d 1147.

■ Here, the circuit court ordered Donald to pay 20% of his net income for child support, less $200, half of Ashleigh's social security benefits. It erred in failing to state Donald's child support obligation in a specific dollar amount. Consequently, we reverse and remand to the circuit court for the limited purpose of modifying the child support order to state the support level in dollar amounts. See *Wassom*, 165 Ill. App. 3d at 1082.

For the foregoing reasons, we affirm in full Jacobs' and Timpone's fee awards; reverse that portion of Shuldiner's fee award which is attributable to work performed in Donald's criminal proceedings and remand for a determination of the exact dollar amount involved; affirm Shuldiner's remaining fee award; reverse in full Pretzel & Stouffer's fee award and remand for further hearings

on the issue; affirm the visitation provisions; and reverse and remand the child support order for the limited purpose of modifying it to state the amount in dollars.

Affirmed in part; reversed in part and remanded with directions.

SCARIANO and DiVITO, JJ., concur.