NO. 4-97-0036

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In Re: the Marriage of ) Appeal from

SARA DAVIS,          ) Circuit Court of 

          Petitioner-Appellee, ) Vermilion County

          v.      ) No. 88D557

ROBERT DAVIS,        ) 

          Respondent-Appellant. ) Honorable

) Joseph P. Skowronski,

                               )    Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court: 

Respondent Robert Davis appeals from a judgment of the circuit court of Vermilion County pursuant to section 508 of the Illi­nois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508 (West 1996)) requiring that he reimburse petitioner Sara Davis $7,423.66 in attorney fees.  The fees at issue were paid by Sara to the attorney who successfully represented her in a lawsuit brought against both Robert and Sara by the Edgar Coun­ty Bank and Trust Company.  The subject of that lawsuit was an unpaid debt allocated to Robert at the time of the parties' divorce.  For the reasons stated below, we affirm.

FACTS

Robert Davis and Sara Davis were divorced in 1988 after 27 years of marriage.  Sara's petition for dissolu­tion was initial­ly filed in Edgar County, where both parties re­side, but the matter was transferred to Vermilion County by agree­ment of the parties.  A judgment of dissolution of marriage was entered by the circuit court of Vermilion County on December 22, 1988, reserving all other issues.  On August 16, 1990, a supplemen­tal order was entered deal­ing with the division of property and the payment of rehabili­tative maintenance to Sara.  Under the supple­mental order, a debt of $67,800 dating from August 1987 to the Edgar County Bank and Trust Company, "characterized as a business loan," was "allocated" to Robert.

On March 19, 1991, Sara filed a petition for rule to show cause in connection with Robert's nonpayment of the bank loan.  The record of the April 23, 1991, proceedings on that petition was not provided.  The rule to show cause was not issued.  (Sara's attorney indicated at a subsequent hearing on October 19, 1993, that the petition was denied because Sara had sustained no damage at that time as a result of Robert's nonpayment of the loan.)

On September 13, 1991, the bank filed suit against both Sara and Robert for nonpayment of the loan.  Robert filed for bank­ruptcy under chapter 13 of the United States Bank­ruptcy Code on Octo­ber 18, 1991, and was later dis­missed from the bank's law­suit, which pro­ceeded against Sara.  Sara filed a second petition for rule to show cause in con­nection with this debt on November 12, 1991.  Apparent­ly no hear­ing was held on that peti­tion.

The circuit court of Edgar County found Sara not liable on the business loan and issued a memorandum decision to that ef­fect on August 11, 1992.  On September 1, 1992, Robert moved to voluntarily dismiss his bankruptcy case (which he had converted to a chapter 7 bankruptcy proceeding in the interim).  He then secured a loan from another bank and paid the business loan in full on Octo­ber 16, 1992.

Sara, who did not make any payments on the business loan, did, however, incur legal defense fees and costs in connection with the successful defense of the bank lawsuit.  On July 30, 1993, Sara filed a third petition for rule to show cause on this matter.  Count I sought to have Robert held in contempt for his fail­ure to pay the business loan in a timely manner and ordered to pay her attorney fees for the bank lawsuit.  Count II dealt with the ongo­ing dispute between the parties regarding maintenance pay­ments and is not relevant to this appeal.  

On August 20, 1993, Robert entered a special and limited appearance for the purpose of objecting to the jurisdiction of the trial court in this matter and a hearing was held on October 23, 1993.  The trial court ruled on November 15, 1993, that it did have subject-matter jurisdiction.  The written order was entered on No­vember 28, 1995, 
nunc
 
pro
 
tunc
 March 14, 1995.  This order also denied the petition to find Robert in contempt inasmuch as he had paid the debt to the bank in full and a finding of civil con­tempt was not needed to coerce his compliance with an order of the court.

Sara's attorney meanwhile had obtained a default judgment against her in the amount of $7,723.69 in the circuit court of Coles County on December 15, 1993. Between that time and the Sep­tember 20, 1996, hearing on the parties' relative financial ability to pay the attorney fees, those fees were paid from the proceeds of the sale of Sara's mother's home.  There is a factual dispute as to how those funds should be characterized.  Robert says that the money used to pay Sara's attorney fees was essentially a gift--it was never repaid, there was no note, and no terms of repayment were established.  Sara says that the amount used to pay her attorney was taken from her share of her mother's estate.  (During the pen­dency of this proceeding, Sara's mother sold her home, moved into a nursing home, and later died.)

The trial court entered a final order on December 20, 1996, containing four findings:  (1) the trial court did have sub­ject-matter jurisdiction under section 508 of the Act (750 ILCS 5/508 (West 1996)); (2) fundamental fairness requires Robert to reim­burse Sara in the amount of $7,423.66 for the attorney fees at issue; (3) Sara lacks the financial resources to pay this debt and had to use a portion of the proceeds of her mother's es­tate for this pur­pose, thereby diminishing assets needed for her living expenses and future retirement; and (4) Robert, al­though he does not have substantial liquid assets, does own proper­ty and is able to reim­burse Sara if given sufficient time to do so.  The order re­quires Robert to repay Sara $7,423.66 in 60 monthly in­stallments of $123.72 each.

Robert appeals, arguing that (1) the trial court lacked subject-matter jurisdiction under section 508 of the Act, (2) sec­tion 508 of the Act does not apply to attorney fees incurred in liti­ga­tion outside divorce court, and (3) the award of attorney fees to Sara was an abuse of dis­cretion and contrary to law.

I.  SUBJECT-MATTER JURISDICTION OF THE TRIAL COURT

The trial court, in its ruling on November 15, 1993, found that it did have subject-matter jurisdiction for the purpose of enforcing the terms of the original judgment.  The court thus explicitly rejected Robert's argument that Sara's petition was an impermissible attempt to modify the terms of the property disposi­tion by imposing new terms and conditions.  Robert argues that the trial court was in error because count I of Sara's petition, seek­ing a finding of contempt and the award of attorney fees, did seek to modify the property terms of the supplemental order of August 16, 1990.  

Robert is correct that under section 510(b) of the Act: 

"The provisions as to property disposi­tion may not be revoked or modified, unless the court finds the existence of condi­tions that justify the reopening of a judgment under the laws of this State."  750 ILCS 5/510(b) (West 1996).  

The provisions for disposition of property in a dissolution judg­ment are thus a vested right and the trial court lacks jurisdiction to mod­ify such provisions once judg­ment has become final.  
Johnson v. Johnson
, 267 Il
l. App. 3d 253, 257, 642 N.E.2d 190, 193 (1994).  The test used to determine if the relief sought is a modification of the judgment is whether the petitioner seeks to "engraft" new obli­gations onto the obligations of the party under the order.  
Waggoner v. Waggoner
, 78 Ill. 2d 50, 53-54, 398 N.E.2d 5, 8 (1979).

Before we can determine whether Sara's petition sought to engraft new obligations onto the original order, we must first determine Robert's obligations under the original order that said the debt was "allocated" to Robert and nothing more.  Disposition of property is governed by section 503 of the Act (750 ILCS 5/503) (West 1996)) and, although the Act does not specifically ad­dress the allocation of debts, "[i]t is well set­tled that mari­tal debts as well as marital assets must be dis­trib­uted equita­bly."  
In re Mar­riage of Lees
, 224 Ill. App. 3d 691, 693, 587 N.E.2d 17, 19 (1992).  If allocation of debts under the Act has any meaning at all, it must mean that the party allo­cated the debt is expected to pay it and to do so in a manner that does not expose the other party to liability on the debt.  Sara had cosigned for the loan with Robert during the marriage and his fail­ure to comply with the order was the cause of her being named in the bank's law­suit and having to incur legal fees.  Robert's claim that the orig­inal order con­tained no direc­tive that he even pay the debt at all is disin­genu­ous.

This situation is readily distinguishable from the cases relied upon by Robert.  In 
Waggoner
, the for­mer wife sought to compel her ex-husband to re­move a judg­ment lien and a second mort­gage, both of which predated the award, on the home awarded to her under the property disposi­tion.  The supreme court held that this was an attempt to engraft addi­tional obligations onto the decree and that the trial court, there­fore, lacked subject-matter juris­diction to entertain the ex-wife's motion.  In 
Waggoner
, the ex-wife took property subject to preexisting debts and it would have been an impermissible modifica­tion of the decree to later assign those debts to the ex-husband.  

In 
In re Marriage of Milliken
, 199 Ill. App. 3d 813, 557 N.E.2d 591 (1990), the former wife sought reimbursement from her ex-husband for her repayment of a loan allocated to him in the dissolution decree.  The loan from the ex-wife's brother to the ex-hus­band was not a "marital debt for which she was legally or joint­ly liable."  
Milliken
, 199 Ill. App. 3d at 819, 557 N.E.2d at 595.  Be­cause the ex-wife's payment of the ex-husband's debt to a third party was pure­ly gratu­itous, requiring him to reimburse her would have had the ef­fect of engrafting a new obligation onto the final decree.  As this would constitute modification of a final property disposi­tion, the trial court again lacked subject-matter jurisdic­tion to hear her peti­tion.  

In the present case, Robert was allocated a debt and Sara, in three separate petitions and by incurring the expense of defending a lawsuit, sought only to protect herself from being held liable for Robert's debt, not to transfer a debt from her­self to Robert after the entry of a final order.  Neither was she seek­ing reimbursement for a debt she had gratu­itously paid on his be­half.  Instead, she sought to have him held in contempt for fail­ure to pay a debt assigned to him and to be reimbursed for legal fees she incurred defending herself from a lawsuit on the same debt.  We find that Sara was not seeking modi­fication of the prop­erty provi­sions of the supplemental order and, therefore, the trial court did have subject-matter jurisdiction over count I of her petition.

II.  APPLICABILITY OF SECTION 508 OF THE ACT

Robert argues that section 508 of the Act is not ap­pli­ca­ble to col­lat­er­al proceedings and that, because Sara's legal fees were in­curred de­fending a separate civil lawsuit in a differ­ent court, they can­not be the subject of a section 508 award.  Sara re­sponds that the sole reason for her need to obtain the services of an attorney was Robert's failure to comply with the terms of the supplemental order and the terms of the loan agreement with the bank.  We must therefore address two questions.  First, we must consider whether a trial court may award attorney fees under sec­tion 508 of the Act for fees in­curred in any type of collateral proceed­ing; second, if so, whether Sara's de­fense of the bank law­suit is the type of pro­ceeding for which fees may be awarded.

The question of the availability of section 508 fees in col­lat­eral proceedings was addressed most recently by the second district in 
In re Mar­riage of Kent
, 267 Ill. App. 3d 142, 640 N.E.2d 973 (1994).  In that case, the former wife in­curred legal fees in con­nection with her former husband's bankrupt­cy pro­ceeding in which he sought to discharge his obligations to her under their settle­ment agree­ment.  The court stated: 

"The plain meaning of the statute allows the recov­ery of fees in­curred in any pro­ceeding that has as its goal the enforce­ment of an order or judgment entered in a disso­lution pro­ceeding."  
Kent
, 267 Ill. App. 3d at 144, 640 N.E.2d at 974.

Finding that the trial court did have jurisdic­tion under sec­tion 508 of the Act to award attorney fees, the court remanded the case to de­termine whether the requirements of section 508(b) of the Act were met.  For rea­sons dis­cussed below, Sara's claim for attor­ney fees must be evalu­ated under section 508(a) of the Act, but this does not af­fect the appli­cabil­ity of the reasoning in 
Kent
.  
Kent
 clear­ly supports the prop­osi­tion that it is the pur­pose, not the loca­tion, of the pro­ceeding that deter­mines whether section 508 of the Act applies.

In an earlier case, the same court found that a trial court had erred by failing to consider whether a separate proceed­ing was brought to enforce the dissolution order.  In 
In re Mar­riage of Sanda
, 245 Ill. App. 3d 314, 612 N.E.2d 1346 (1993), the for­mer wife attempted to enforce a judgment by two alternative means, a petition for rule to show cause and a separate civil suit against the former husband alleging fraud in con­nec­tion with the assets that were the subject of the dissolution or­der.  The relief sought in both proceedings was identical.  The court found that the trial court must determine if the separate proceed­ing was brought to enforce the order and, if so, determine reason­able at­torney fees.

These cases from the second district clearly contemplate the award of section 508 attorney fees in connection with certain col­lateral proceedings.  Robert relies on three cases from the first and fifth districts for the opposite conclusion.  These cases are either distinguishable on their facts or, in any event, do not support Robert's argument that section 508 of the Act may not apply to any col­lat­er­al proceeding.

In 
In re Marriage of Burton
, 203 Ill. App. 3d 890, 561 N.E.2d 180 (1990), suit was brought by the former wife's at­tor­ney against his client for services provided to her in the ex-husband's postdivorce bankruptcy proceeding.  The fifth district court stat­ed:

 "
Ordinarily
, a court hearing dissolution pro­ceedings does not have subject[-]matter ju­ris­diction to award attorney fees ren­dered in any case other than the one proceeding before it."  (Emphasis added.)  
Bur­ton
, 203 Ill. App. 3d at 894, 561 N.E.2d at 183. 

Bur­ton
 is thus in conflict with 
Kent
, which also involved a postdivorce bankruptcy proceeding, but even 
Burton
 does not suggest this rule is absolute.  

Robert also relies on a first district case, 
In re Mar­riage of Pitulla
, 141 Ill. App. 3d 956, 491 N.E.2d 90 (1986).  
Pitulla
 involved a dispute between an attorney and his client over the reasonable­ness of the fees charged for repre­senta­tion in a divorce proceed­ing.  A single footnote in 
Pitulla
 is relevant:

"[S]ection 508 was never intended to be used as a vehicle to obtain a judgment for attorney fees for all kinds of legal servic­es performed on behalf of a client.  Rather, a judgment for attorney fees under the Act may only be for legal ser­vices 'made in connec­tion with' the specific provisions of section 508."  
Pitulla
, 141 Ill. App. 3d at 959 n.1, 491 N.E.2d at 92 n.1.

The attorney in this case had appor­tioned his $10,000 fee equally between "tax advice" and "matrimonial representation" and it was not clear whether the tax advice ren­dered re­lated to any proceeding under the Act.  There­fore, the matter was remanded to deter­mine whether the tax advice was made in con­nection with one of the five enumerated subparagraphs of section 508(a) of the Act.  
Pitulla
 thus stands for the proposition that an attorney is not entitled to utilize section 508 of the Act to obtain a judgment against his cli­ent un­less the fees were earned in connection with one of the pro­ceed­ings enumer­ated in section 508(a) of the Act and does not speak to the situ­a­tion before us.  

In re Marriage of Campbell
, 261 Ill. App. 3d 483, 633 N.E.2d 797 (1993), another case from the first district is simi­lar­ly inap­po­site.  This case also involved an attorney seek­ing to recover un­paid fees from his own client, an ex-husband he had rep­re­sented in a divorce.  Citing the language in 
Burton
 that "or­di­nari­ly" fees cannot be awarded for representation in a collateral mat­ter, the court held the trial court:

"had no jurisdiction in this dis­so­lu­tion case to award *** fees for work per­formed in [client's] criminal case, which was pro­ceeding in a different court totally inde­pen­dent of the dissolution case."  
Camp­bell
,
 261 Ill. App. 3d at 491, 633 N.E.2d at 803.

After reviewing these cases, we find that 
Kent
 is fac­tually similar to the present case and is most persuasive.  The collateral proceeding in this case was not a bankruptcy but a law­suit by a creditor against both Robert and Sara.  Robert's fil­ing for bankruptcy resulted in his dismissal from the suit, leaving Sara alone exposed to liability on the loan that had been allo­cat­ed to him.  Like the former wife in 
Kent
, Sara did not ini­tiate this proceeding in another court, she merely defended her interests under the terms of the supplemental order.  
Pitulla
 and 
Campbell
 are factually distinguishable in that they involved attor­neys seek­ing fees from their own clients for types of representation, crimi­nal defense and tax advice, that are clearly not among the enumer­ated proceedings covered by section 508 of the Act.  
Burton
 not­with­stand­ing, we agree with the second district that an award of attorney fees under section 508 of the Act may be made for ex­pens­es in­curred in connection with a pro­ceeding to enforce the provi­sions of a disso­lution order, even if that proceeding occurs in a differ­ent court.

Having found that Sara's petition did not seek to modify the original order and that attorney fees under section 508 of the Act may be available for some proceedings outside the divorce court, we must determine whether Sara incurred these attorney fees in an effort to 
enforce
 the property provisions of the supple­mental order, thus coming within the scope of one of the enumerated pro­ceedings under section 508 of the Act.

The 
Millik
en
 court distinguished between modification, found on its facts, and enforcement, where a former spouse seeks reimbursement for payment of a debt for which her legal liabil­ity has been established.  
Milliken
, 199 Ill. App. 3d at 819, 557 N.E.2d at 595-96.  Under this reasoning in 
Milliken
, and en­tire­ly consistent with 
Waggoner
, it would have constituted en­force­ment of the property disposition if Sara had allowed the bank to obtain a default judgment against her and to place a judg­ment lien on her home and then sought to compel Robert to pay the loan.  It elevates form over substance to suggest that defending the same lawsuit and thereby incurring legal expenses is not also for the purpose of enforcing the order.  Enforcement clearly means coercing the other party into compliance.  Enforcement may also mean giving effect to the terms of the order in collateral litigation.  Sara sought to enforce the allocation of the debt to Robert, to give effect to the terms of the supplemental order, when she success­fully defended the bank's lawsuit against her.

Robert characterizes Sara's legal fees as 
"incidental expenses 
she claims to have incurred postjudgment in connection with debt assigned to Robert" and concludes that it "may be un­for­tu­nate Sara was sued in the meanwhile."  If Sara's claim is based on enforcement of the original order, and we find that it is, then her attorney fees are not merely "incidental expenses," they are spe­cifically allowed by statute to be awarded under certain circum­stances.

III.  APPLICATION OF SECTION 508 OF THE ACT BY THE TRIAL COURT

There are two separate provisions under section 508 of the Act (750 ILCS 5/508(a)(2) (West 1996)) that apply to enforce­ment.  Under section 508(a) of the Act, the award of attorney fees is dis­cre­tion­ary with the trial court and is made after con­sidering the relative finan­cial resources of the parties.  Under sec­tion 508(b) of the Act, howev­er, the award of attorney fees is manda­to­ry upon a finding that the fail­ure to comply with the order was with­out cause or justifi­cation.  A find­ing of contempt is suffi­cient to support a mandatory award of attorney fees but is not necessary.  See 
In re Marriage of Young
, 200 Ill. App. 3d 226, 230, 559 N.E.2d 178, 180-81 (1990).  
In this case, the question of con­tempt was made moot by Robert's payment of the debt after Sara prevailed in the bank lawsuit.  There was no finding by the court that Robert's earlier failure to pay the bank debt was without cause or justifi­cation.  The court did engage in a balancing of the parties' rela­tive financial conditions as required by sec­tion 508(a) of the Act.  It is clear that the trial court was applying section 508(a) of the Act, even though the final order does not spe­cif­i­cal­ly men­tion that provision.  We find that section 508(a) of the Act was the proper provi­sion under which Sara's peti­tion for attorney fees should have been consid­ered.

Whether the attorney fees of one spouse should be paid by the other spouse is a decision that lies within the sound dis­cre­tion of the trial court and will not be disturbed on review absent an abuse of that discretion.  
In re Marriage of Blazis
, 261 Ill. App. 3d 855, 870, 634 N.E.2d 1295, 1305 (1994).  In general, each party has the primary obligation to pay his or her own attor­ney fees.  
In re Marriage of Mantei
, 222 Ill. App. 3d 933, 941, 583 N.E.2d 1192, 1197 (1991).  Robert cites 
In re Mar­riage of Hack­er
, 239 Ill. App. 3d 658, 668, 606 N.E.2d 648, 655 (1992), as placing the burden on Sara to show her inability to pay and his ability to pay the fees in question.  He argues the fact that she has al­ready paid the fees and seeks reimbursement is evi­dence of her ability to pay.  

This court most recently addressed the issue of the award of attorney fees under section 508 of the Act in 
In re the Mar­riage of Minear
, 287 Ill. App. 3d 1073, 679 N.E.2d 856 (1997),
 which, after cit­ing 
Mantei
 and 
Hack­er
 for the gen­eral rules above, ex­plained:

"Yet financial inability to pay does not de­mand a showing of desti­tution, and the fee-seeking spouse is not re­quired to divest him­self of capital assets before requesting fees.  [Citation.]  It is sufficient to show payment would ex­haust his estate or strip him of his means of sup­port or undermine his economic stabili­ty."  
Minear
, 287 Ill. App. 3d at 1085, 679 N.E.2d at 865. 

This is consistent with 
In re Marriage of Head
, 273 Ill. App. 3d 404, 411-12, 652 N.E.2d 1246, 1252 (1995), cit­ed by Sara, which re­quires the spouse with the "superior ability to acquire income and supe­rior capital assets" to pay the other spouse's attorney fees "if a de­pletion of principle [
sic
] would result from requiring the latter to pay the fees." 

The trial court heard and considered detailed evidence regarding the relative financial conditions of Robert and Sara, including his gross monthly income of $11,625 and her gross monthly income of $1,903 (including the $450-per-month maintenance pay­ment).  The order of the trial court clearly applied the principle of 
Minear
 and 
Head
 that one spouse should not be required to invade capital to pay fees the other spouse could pay from current in­come.  Based upon testimony that the trial court found credible, Sara had been re­quired to pay the fees from "monies obtained from her mother's estate, thereby diminishing assets which she needs for her retire­ment and future living expenses."  The trial court also ac­knowl­edged and gave prop­er weight to Robert's financial condi­tion, which he describes as "insolvent," when it found that al­though Robert "does not have substantial liquid assets, he does have a house, office building and farm, and can reimburse [Sara] for the attorney fees from his current income, if given a substantial length of time to do so."

The order that Robert reimburse Sara by making 60 monthly installment payments of $123.72 thus addresses the concern raised by the dissenting judge in 
Minear
 (287 Ill. App. 3d at 1085-88, 679 N.E.2d at 866-67 (Cook, J., dissenting)). 
  In that case, ei­ther party would have been re­quired to in­vade capital assets to pay the fees; there­fore, the dissent stated, there was no justi­fica­tion for shift­ing the fees from one to the other.  In this case, howev­er, Robert's pay­ment in monthly install­ments of approximately 1% of his gross in­come over five years will enable Sara to re­build the capi­tal de­pleted by the judg­ment against her for these fees.  We have previ­ously endorsed the installment approach to the payment of attorney fees by a party who lacked the present abili­ty to pay but had suf­ficient income to do so.  
In re Marriage of Mc­Coy
, 272 Ill. App. 3d 125, 131-32, 650 N.E.2d 3, 7 (1995). 

Robert takes exception to the language of the order that "fundamental fairness" requires that he reimburse Sara for these fees, stating in his brief that "fundamental fairness is not a relevant concept under Section 508."  He is, of course, correct that the trial court is obliged under section 508(a) of the Act to en­gage in a bal­ancing of the parties' relative abilities to pay the fees, not to act as a court of equity.  But neither is fairness totally ir­rele­vant--it is the essence of the exercise of discretion to reach a fair determination.  The trial court did engage in the proper anal­ysis and did properly exercise its discretion in award­ing $7,423.66 in attorney fees to Sara, to be paid in monthly in­stallments over five years.  

IV.  AVAILABILITY OF AWARD OF ATTORNEY

FEES FOR THIS PROCEED
ING

In her brief, Sara requests that this case be remanded so that she may seek payment by Robert of her attorney fees in con­nec­tion with this appeal.  Because we have found that the action in the trial court did constitute a proceeding under the Act, this appeal does come under section 508(a)(3) of the Act, which allo
ws the award of attorney fees for "[t]he defense of an appeal of any order or judg­ment under this Act."  750 ILCS 5/508(a)(3) (West 1996); 
In re Mar­riage of Pow­ers,
 252 Ill. App. 3d 506, 508, 624 N.E.2d 390, 392 (1993).  Sara is free to file her peti­tion and re­quires no remand from this court to do so.  
Such an award rests, of course, within the sound dis­cre­tion of the trial court.

CONCLUSION

For the foregoing reasons, we hold that the trial court did have subject-matter jurisdiction over this matter; that section 508 does allow the recovery of attorney fees incurred in the de­fense of a lawsuit for the purpose of enforcing an order entered in a dissolution proceeding; and that the trial court, in its dis­cre­tion, properly ordered that Robert reimburse Sara for attorney fees by means of monthly installments.  The judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.